## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

Plaintiff,

v.

USA CONTAINER CO., INC,

Defendant.

Civ. No. 09-cv-01612 (JLL)(MAH)

---

**Report and Recommendation of the Special Master on**
**USA Container's Motion to Compel Documents**
**on Travelers' Privilege Log**

---

*Submitted By:*

Hon. Douglas K. Wolfson, J.S.C. (Ret.)
Special Master
Schwartz Simon Edelstein & Celso LLC
100 South Jefferson Road, Suite 200
Whippany, New Jersey 07981
(973) 301-0001
dwolfson@sseclaw.com

**Table of Contents**

|  | | Page |
|---|---|---|
| I. | Introduction............................................................................................ | 2 |
| II. | Background.......................................................................................... | 3 |
| III. | USA Container's Moving Brief................................................................ | |
| | A. USA Container's Challenges to the Documents Designated | |
| | As Attorney-Client Communications based on: | |
| | 1. Business Advice.......................................................... | 6 |
| | 2. Waiver........................................................................ | 8 |
| | 3. Bad Faith Claim......................................................... | 9 |
| | 4. Crime/Fraud Exception.............................................. | 11 |
| | B. USA Container's Challenge to the Documents Designated | |
| | As Work Product.......................................................................... | 12 |
| IV. | Travelers' Opposition based on: | |
| | A. Reasons for Denying Coverage................................................... | 13 |
| | B. Business Advice, Waiver and the Common Interest Doctrine ............. | 17 |
| | C. Bad Faith Claim.......................................................................... | 19 |
| | D. Crime/Fraud Exception............................................................... | 20 |
| | E. Work Product ............................................................................. | 20 |
| V. | USA Container's Reply based on: | |
| | A. Relevance................................................................................. | 21 |
| | B. Travelers' Reasons For Denying Coverage................................... | 23 |
| | 1. "Property Damage" and Exclusion (l)......................... | 24 |
| | 2. "Occurrence."............................................................. | 25 |
| | 3. Exclusion (j)(4).......................................................... | 27 |
| | 4. Exclusion (j)(6).......................................................... | 27 |
| | C. Business Advice and the Common Interest Doctrine ..................... | 27 |
| | D. Crime/Fraud Exception............................................................... | 28 |
| | E. Work Product ............................................................................. | 28 |
| VI. | Supplemental Submissions .................................................................... | 29 |
| VII. | Recommendation.................................................................................. | 32 |
| | A. Relevance................................................................................. | 32 |
| | 1. Breach of Contract Claim............................................ | 33 |
| | 2. Bad Faith Claim......................................................... | 33 |
| | B. Privilege and Work-Product Analysis........................................... | 37 |
| | 1. Attorney-Client Privilege............................................ | 38 |
| | (1) Business advice........................................... | 40 |
| | (2) Waiver/Common-Interest Doctrine................ | 41 |
| | (3) Using A Bad Faith Claim to Pierce the Privileges........... | 46 |
| | (4) Crime/Fraud Exception ............................... | 50 |
| | 2. Work-Product Doctrine................................................ | 52 |
| VIII. | Conclusion........................................................................................... | 55 |
| IX. | Appendix A .......................................................................................... | 56 |

## I. Introduction.

Pursuant to the Order Appointing Master filed on August 20, 2012 ("Order Appointing Special Master"), and having considered the moving papers submitted by defendant USA Container Co., Inc. ("USA Container"), the opposition filed by plaintiff The Travelers Property Casualty Company of America ("Travelers"), the reply by USA Container, the supplemental submissions by Travelers and USA Container and argument of counsel, the following is my Report and Recommendation containing my findings of fact and conclusions of law with regard to USA Container's motion to compel certain documents withheld by Travelers on the basis of the attorney-client privilege and/or work-product doctrine. In preparing this Report and Recommendation, I considered the following:

1. USA Container's Brief in Support of Motion to Compel the Production of Documents dated May 14, 2012 ("Moving Brief") and the Certification of Kenneth L. Moskowitz, Esq. dated May 14, 2012 ("Moskowitz Certif.") with Exhibits A to I;

2. Travelers' Opposition to USA Container's Motion to Compel the Production of Privileged Documents dated June 11, 2012 ("Opp.") and the Certification of John M. Bowens, Esq. dated June 6, 2012 ("Bowens Certif.") with Exhibits A to C,

3. Travelers' Privilege Log (Withheld Documents) dated March 30, 2012 and the documents withheld from production Bates stamped TRA 1033 to 1107 that were provided by Travelers for review *in camera*.

4. Travelers' Privilege Log (Redacted Documents) dated March 30, 2012 listing TRA 1029, 1031 as containing redacted material along with redacted and unredacted copies of TRA 1029 to 1032 provided by Travelers for review *in camera*.

5. Reply Brief of USA Container In Further Support of Motion to Compel the Production of Documents by Travelers dated June 26, 2012 ("Reply") and the Reply Certification of Kenneth L. Moskowitz dated June 26, 2012 ("Moskowitz Reply Certif.") with Exhibits A and B.

6. USA Container's supplemental letter brief dated October 9, 2012 ("USA Container's Supp.").

7.    Travelers' supplemental letter brief dated October 9, 2012 ("Travelers' Supp.")
      and the supplemental information regarding the withheld documents provided by
      Travelers to the Special Master on October 11, 2012 and October 23, 2012.[1]

Oral argument was held on October 3, 2012.

## II.   Background.

This is a dispute regarding insurance coverage under a commercial general liability

insurance policy issued by Travelers to USA Container ("Travelers Policy") for a claim by

Meelunie B.V. ("Meelunie") against USA Container in the matter captioned Meelunie B.V. v.

USA Container Co., Inc. and Passaic River Terminal LLC, District Court of New Jersey, Case

No. 2:08-cv-05341 (FSH)(MAS) ("Underlying Action"). In the Underlying Action, Meelunie

alleged that it: (1) contracted with USA Container to drum corn syrup from rail cars at the

Passaic River Terminal in Newark, New Jersey; (2) USA Container subcontracted with Passaic

River Terminal, LLC ("PRT") to perform the drumming of the corn syrup; (3) the applicable

Standard Operating Procedures were not followed; (4) the corn syrup was overheated and

discolored from being burnt; (5) so that the corn syrup could not be used for its intended

---

[1]       By letter dated October 19, 2012, counsel for Travelers provided to counsel for
USA Container a revised Privilege Log (Withheld Documents) which incorporates much of the
supplemental information that was provided by Travelers to the Special Master by email on
October 11, 2012.

In addition to responding to the Special Master's request for clarification about certain of
the withheld documents raised at oral argument, the revised privilege log also added "work
product in anticipation of litigation" in addition to the claim of attorney-client privilege for the
first two documents withheld -- without highlighting these changes in either the cover letter or on
the revised privilege log itself. These claims of work product were asserted just prior to issuance
of the Recommendation, after full briefing and oral argument, and, accordingly, are not included
in the body of this Report. While these additional claims did not change the result (as explained
in Appendix A), the better practice would have been to have timely asserted the privilege claims
in advance of briefing, and to highlight any changes in the revised privilege log for the benefit of
opposing counsel.

purpose; and (6) it was rejected by or could not be shipped to Meelunie's customers. Meelunie Complaint at ¶¶7-20.[2]

By letter dated December 19, 2008, Travelers denied coverage for the Underlying Action on the basis that: (1) the Complaint does not allege "bodily injury" as defined in the Travelers Policy; (2) there is no "property damage" to the extent the Meelunie Complaint "fails to allege physical injury to or loss of use of tangible property other than to the work performed by or on behalf of the named insured"; (3) claims based upon breach of contract and faulty workmanship are not deemed an "occurrence" under the Travelers Policy; and (4) policy exclusions *(j)(4)* and *(j)(6)* in the Travelers Policy preclude coverage. Moving Brief at 3, Moskowitz Certif., Ex. B. By letter dated January 26, 2009, USA Container advised Travelers that it disputed Travelers' coverage position. Moskowitz Certif., Ex. C.

In April 2009, Travelers filed the Complaint in this action seeking a declaration that there is no insurance coverage for the claims in the Underlying Action. ECF Doc. 1. USA Container filed an Answer and Counterclaim alleging breach of contract and that Travelers acted in bad faith in denying its claim for insurance coverage. ECF Doc. 3. The bad faith claim asserts that Travelers breached the duties it owed to USA Container by "unfairly and unnecessarily" delaying the evaluation and resolution of the claim for coverage, denying that claim "improperly and without good or valid reason," and by refusing to tender a defense, concluding that "[t]here is no valid reason to justify or excuse Travelers' actions, inaction, wrongful declination of USA Container's coverage claim, and refusal to tender a defense, and Travelers' actions constitute bad faith within in the meaning of N.J.S.A. 17:29B-4 and governing law." Id. at ¶¶23, 25.

---

[2]    A copy of the Complaint in the Underlying Action ("Meelunie Complaint") is annexed to the Bowens Certif., Ex. B.

- 4 -

Jurisdiction in this Court is based upon diversity of citizenship, the claims in this matter are based solely on state law and no federal question is presented. ECF Doc. 1 at ¶¶3-13, ECF Doc. 3 at ¶¶3-25.

The deposition of a Travelers claim representative was taken on January 17, 2012. Moskowitz Certif., Ex. D. Following that deposition, USA Container issued a supplemental request for documents directed to Travelers. Moving Brief at 7, Moskowitz Certif., Ex. F. In response to those requests, USA Container advises that on March 30, 2012 Travelers produced 217 pages of documents, including the documents annexed to the Moskowitz Certif. as Exhibits E, G and H. Moving Brief at 7-8.

In this motion, USA Container seeks to compel production of documents, Bates stamped TRA 1033 to 1107 (18 documents withheld from production) and an unredacted copy of TRA 1029 and 1031 (2 copies of the same redacted email) listed on Travelers' privilege and redaction logs dated March 30, 2012. Travelers claims the attorney-client privilege for sixteen documents, "work product in anticipation of litigation" for one document, and both attorney-client privilege and work product for one withheld document and the redacted portions of TRA 1029 to 1032.

The parties' arguments and my Recommendation on the legal issues are set forth below. My document-by-document analysis is in Appendix A.[3]

---

³     The analysis of the privilege issues here was substantially complicated because the legal issues raised by the privilege claims required review and analysis of the substantive insurance coverage issues, which essentially comprise the party's summary judgment motions on the merits of this case.

**III.    USA Container's Moving Brief.**

*A.    USA Container's Challenges to the Documents Designated As Attorney-Client Communications.*

    *1.    USA Container's Challenge Based Upon Business Advice.*

The attorney-client privilege does not apply where the primary purpose of the communication is to provide "business," rather than "legal" advice. Moving Brief at 10, citing Leonen v. Johns Mansville, 135 F.R.D. 94, 98 (D.N.J. 1990) ("Communications which relate to business rather than legal matters do not fall within the protection of the privilege"); Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 305 (D.N.J. 2008)("Sealed Air")("the general rule is 'while legal advice given to a client by an attorney is protected by the privilege, business advice is generally not'")(citation omitted). USA Container cites a recent decision involving claims of attorney-client privilege in the reinsurance context where Magistrate Judge Arpert expounded on these well accepted principles, explaining that in the corporate community: "legal advice is often intertwined with and difficult to distinguish from business advice" and it is "often too difficult, impractical and unrealistic to compartmentalize" the two, so that the "proper inquiry is focused on whether the communication is designed to meet problems that fairly can be characterized as predominately legal" and the party claiming privilege "should demonstrate that the communication would not have been made but for the client's need for legal advice or services." Moving Brief at 10-11, citing Munich Reinsurance America, Inc. v. American Nat'l Ins. Co., 2011 WL 1466369, at *18 (D.N.J. Apr. 18, 2011)(citations omitted).

In challenging the claims of attorney-client privilege, USA Container asserts that "documents prepared by an attorney in the insurer's ordinary course of business, including documents reflecting the insurer's investigation of a claim or coverage, and reports analyzing the

- 6 -

insured's entitlement to coverage, are not protected from discovery." Moving Brief at 11-12, citing Westwood Products, Inc. v. Great American E&S Ins. Co., 2011 WL 3329616, at *12 (D.N.J. Aug. 1, 2011), quoting Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 190 F.R.D. 532, 537-38 (S.D.Ind. 1999)("[a]n insurer's investigative records … [are] not subject to the work product privilege and should be presumed not to be privileged when the records pertained to the investigation before the insurer made its final decision to deny the insured's claim");[4] Brooklyn Union Gas Co. v. American Home Assurance Co., 803 N.Y.S.2d 532, 534 (1st Dep. 2005)("Documents prepared in the ordinary course of an insurance company's investigation to determine whether to accept or reject coverage and to evaluate the extent of a claimant's loss are not privileged … [and] do not become privileged 'merely because an investigation was conducted by an attorney'")(citation omitted); AIU Ins. Co. v. TIG Ins. Co., 2008 WL 4067437, at *11 (S.D.N.Y. Aug. 28, 2008)("'[A] document will not become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical communications between corporate employees.' Indeed, 'in analyzing communications created at the direction of in-house counsel, courts must be wary that the involvement of the attorney is not being used simply to shield corporate communications from disclosure.' 'The documents made at the request of [the reinsurer's] counsel that contain merely business communications are, therefore, not privileged'….")(citations omitted); Mission Nat. Ins. Co. v. Lilly, 112 F.R.D. 160, 163 (D.Minn. 1986)(to the extent law firm served as claim adjusters, its communications to client would be treated as ordinary business of the insurer,

---

[4]    The Moving Brief mistakenly cites St. Paul Reinsurance Co. v. Commercial Fin. Corp., 197 F.R.D. 620, 635 (N.D. Iowa 2000) for the quoted language. However, the language included in the Moving Brief is from Goodyear, 190 F.R.D. at 537-38, which was quoted in Westwood immediately after the quote from St. Paul. The layout of the electronic version of the case makes the references confusing.

outside the scope of asserted attorney-client and work product privileges, as it "would not be fair to allow insurer's decision [to have the law firm act in double capacity] to create a blanket obstruction to discovery of its claims investigation").

USA Container believes that an *in camera* review will demonstrate that many of the documents withheld from production are not truly privileged attorney-client communications, pointing out that several documents on the Travelers' Privilege Log with subjects titled "coverage analysis" or "coverage opinion" were created before Travelers denied coverage on December 19, 2008 (specifically row numbers 3, 5, 7, 8 and part of row 9), so that USA Container believes that *in camera* review will show that these communications "predominately reflect business-oriented advice or advice relating to an insurance company's routine business of providing or declining coverage," and not legal advice. Moving Brief at 12. USA Container asserts that the documents in rows 10 to 18 of the Privilege Log are dated prior to Travelers' initiation of this action on April 6, 2009 "casting doubt" as to whether these documents represent legal advice as opposed to a "routine analysis of coverage." Id. USA Container concludes: "To the extent that Travelers is withholding and designating its actual business and investigatory communications as privileged, USA Container has a right to such information so that it can establish its entitlement to coverage under the Policy." Id.

2.    *USA Container's Challenge Based Upon Waiver.*

USA Container argues that even if the attorney client privilege applies, it also must be established that the privilege has not been waived by voluntary disclosure of the privileged communication to a third party. Moving Brief at 12-13, citing In re Teleglobe Communications Corp., 493 F.3d 345, 361 (3d Cir. 2007); Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999); Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414,

- 8 -

1424 (3d Cir. 1991). "Travelers should be deemed to have waived any privilege with respect to the subject matter of those communications it voluntarily revealed to Chubb [the excess/umbrella insurer] or any other third party." Moving Brief at 13.

USA Container refers specifically to TRA 1029 to 1032, an email exchange on March 18, 2009 between Michele Simpson, the Travelers claim representative, and Paul Berardinelli of Chubb (referred to by the parties as the "Berardinelli email"). Id. at 13. USA Container states that the Berardinelli email "confirmed, among other things, Simpson's apparent advice that Travelers would tender a defense to USA Container with respect to the Underlying Action brought [by] Meelunie." Id. at 13. That Travelers never tendered a defense is "another factor" relevant to USA Container's bad faith claim. Id. According to USA Container, the redacted portions of the Berardinelli email, which reflects Travelers' position with respect to coverage, constitute "essential proof of USA Container's bad faith claim." Id. at 13.

USA Container also points out that the claims of privilege over the Berardinelli email are "suspect" because neither Simpson nor Berardinelli are attorneys. Moving Brief at 13-14, citing Cooper Health Sys. v. Virtua Health, Inc., 259 F.R.D. 208, 214 (D.N.J. 2009)(attorney-client privilege did not attach where none of the documents were authored by or sent to an attorney and it was not established that the emails were necessary to obtain informed legal advice).

*3. USA Container's Challenge Based Upon Its Bad Faith Claim.*

USA Container states that "[t]he attorney-client privilege will not shield from production those documents or materials in the possession of an insurer that relate to the bad faith claims of an insured." Moving Brief at 14, citing Allstate New Jersey Ins. Co. v. Humphrey, 2008 WL 382666, at *4 (N.J. App. Div. Feb. 14, 2008)(attorney-client privilege did not shield materials in possession of insurer where the bad faith claim could be proven only by using evidence in the

- 9 -

insurer's control, requiring Allstate to produce "communications relating to Allstate's claim of lack of coverage as the result of its intentional conduct exclusion and its factual support, and communications relating to Allstate's claim that the [defendants] lack the status of insureds under the [insurance] policy and its investigation of that issue.") and Zurich Ins. Co. v. State Farm Mut. Auto Ins. Co., 137 A.D.2d 401, 402 (1st Dept 1988)("Where it is alleged that the insurer has breached that duty to insured, the insurer may not use the attorney-client or work-product privilege as a shield to prevent disclosure which is relevant to the insured's bad-faith action").

USA Container asserts that the "record facts" support the conclusion that Travelers improperly denied coverage without a "fairly debatable" basis to do so. Moving Brief at 14, citing Pickett v. Lloyd's, 131 N.J. 457, 481 (1993)(application of the "fairly debatable" standard). USA Container cites excerpts from the January 2012 deposition testimony of the Travelers claims representative Simpson who authored Travelers' December 19, 2008 denial letter and the Berardinelli email, as showing: (i) Simpson initially determined that there was an "occurrence" within the meaning of the Travelers policy, but changed her view in the denial letter, (ii) Simpson initially determined that Travelers would tender a defense to USA Container, but then reversed her position; (iii) Simpson acknowledged that, if the subcontractor exception to "your work" exclusion applied, USA Container would be entitled to coverage; (iv) Travelers' investigative reports reflect that USA Container's subcontractor actually performed the work that resulted in the damage to the corn syrup; and (v) Simpson, other than referring generally to consultations with counsel, was incapable of either explaining the basis for her purported determination that the subcontractor exception did not apply, or why USA Container was not

entitled to coverage under the Policy. Moving Brief at 14-15, citing Moskowitz Certif., Ex. D (deposition transcript excerpts) and Ex. E (Berardinelli email).

USA Container asserts that the "Coverage Analysis Email" (TRA 1037-1038, TRA 1050-1074 and TRA 1105-1107), the "Coverage Opinion Reports" (TRA 1047-1049 and 1075-1103), the Simpson Handwritten Notes (TRA 1104) and the Berardinelli email (TRA 1029-1031), withheld on the basis of attorney-client privilege are all material to USA Container's bad faith claim, and cannot be protected from disclosure on grounds of privilege. Moving Brief at 15.

  *4. USA Container's Challenge Based Upon the Crime/Fraud Exception.*

The crime/fraud exception allows for disclosure of otherwise privileged communications when they are made with the intent to further a continuing or future crime or a fraud. Moving Brief at 15-16, citing Wachtel v. Guardian Life Ins., 2007 WL 1752036, at *1-2 (D.N.J. June 18, 2007); United Services Auto. Ass'n v. Werley, 526 P.2d 28, 33 (Alaska 1974)("When an insurer through its attorney engages in a bad faith attempt to defeat, or at least reduce, the rightful claim of its insured, invocation of the attorney-client privilege for communications pertaining to such bad faith dealing seems clearly inappropriate. We thus find that the tortious activity alleged by Werley satisfies the 'civil fraud' requirement of the exception to the attorney-client privilege"). New Jersey courts have interpreted the "crime fraud" exception to "virtually all kinds of deception and deceit, even though they might not otherwise warrant criminal or civil sanctions." Moving Brief at 16, citing Ngai v. Old Navy, 2009 WL 2391282, at *5 (D.N.J. July 31, 2009) quoting Ocean Spray Cranberries, Inc. v. Holt Cargo Sys., Inc., 345 N.J. Super. 515, 522-27 (Law Div. 2000)(ordering production of memorandum the client wrote to counsel because it was "rife with documentation of coverup, fraud, deception, fabrication, deceit and false information...").

USA Container asserts that the crime/fraud exception to the attorney-client privilege applies to the Coverage Analysis Email (TRA 1037-1038, TRA 1050-1074 and TRA 1105-1107), the Coverage Opinion Reports (TRA 1047-1049 and 1075-1103), the Simpson Handwritten Notes (TRA 1104) and the Berardinelli email (TRA 1029-1031) because Travelers improperly denied coverage after communicating with coverage counsel. Moving Brief at 16-17.

*B. USA Container's Challenge to the Documents Designated As Work Product.*

USA Container challenges Travelers' withholding of documents and information as work product that "reflect the basis, if any, of Travelers' determination that USA Container was not entitled to coverage under the Policy." Moving Brief at 17. Like the arguments relating to the attorney-client privilege, USA Container contends that "[d]ocuments prepared in the ordinary course of Travelers' Claims Department's business, including documents relating to any investigation and coverage analysis ... presumably were not primarily for the purpose of litigation or because of litigation, and, therefore, cannot fairly be properly characterized as 'work-product.'" Id. at 18, citing American Home Assurance Co. v. United States, 2009 WL 3245445, at \*1 (D.N.J. Oct. 7, 2009)("It is well-settled that reports generated in the course of general investigations, even if litigation is arguably anticipated, are not entitled to work-product protection"); Connecticut Indem. Co. v. Carrier Haulers, Inc., 197 F.R.D. 564 (W.D.N.C. 2000)(documents created by insurer during the normal course of its business in deciding whether to deny claim were not prepared in anticipation of litigation); Nicklasch v. JLG Indus., Inc., 193 F.R.D. 568, 570 (S.D.Ind. 1999)("An investigation that is undertaken to determine whether there is coverage, whether the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in anticipation of litigation").

USA Container advises that Travelers has not shown that the two documents TRA 1039-1042 (Simpson/Roark email exchange) and TRA 1047-1049 (Liability Property Damage Worksheet) withheld as work product were prepared after Travelers decided to deny USA Container's coverage claim. Moving Brief at 18. The fact that Travelers commenced litigation on April 21, 2009 does not "cloak the documents at issue retroactively with work product immunity." Id. at 18, citing In re Gabapentin Patent Litigation, 214 F.R.D. 178, 184 (D.N.J. 2003)("Documents created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are routinely prepared in the ordinary course of business are outside the scope of work product protection").

## IV.  **Travelers' Opposition.**

### A.  *Travelers' Reasons for Denying Coverage.*

Travelers points out that USA Container's only basis for seeking this discovery is its bad faith claim, which Travelers urges is not viable and cannot be used as a basis to compel discovery of otherwise privileged documents. Opp. at 1. In order to maintain its claim for bad faith, USA Container must show that Travelers knew that it lacked any reasonable basis for denying coverage, and knowingly or recklessly disregarded that fact. Opp. at 1, citing Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc., 2010 U.S. Dist. LEXIS 112640, at *20 (D.N.J. Oct. 21, 2010), quoting Pickett v. Lloyd's, 131 N.J. 457, 473 (1993).[5]

---

[5]  Travelers also states that under New Jersey law, an insurer's refusal to defend does not, in the absence of egregious circumstances, furnish an independent basis for tort-based damages. Opp. at 1, citing Kocse v. Liberty Mut. Ins. Co., 152 N.J. Super. 371 (Law Div. 1977); Ellmex Const. Co. v. Republic Ins. Co., 202 N.J. Super. 195, 206 (App. Div. 1985), certif. den., 103 N.J. 453 (1986); Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358, 361-64 (App Div. 1983); Kubiak v. Allstate Ins. Co., 198 N.J. Super. 115, 120 (App. Div. 1984), certif. den. 101 N.J. 290 (1985). At oral argument, USA Container referenced these cases as support for its
*(footnote continued on next page)*

In this regard, USA Container's singular focus is on "exclusion (*l*)" in the Travelers Policy. In so doing, however, it ignores the several other reasons offered by Travelers as its basis for denying coverage. Opp. at 2, citing Moskowitz Certif., Ex. B (Travelers' December 19, 2008 denial letter).

The insuring agreement in the Travelers Policy states:

> a.     [Travelers] will pay those sums that the insured because legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....b.     This insurance applies to "bodily injury" or "property damage" only if: (1) the 'bodily injury' or 'property damage' is caused by an "occurrence" that takes place in the "coverage territory."

Opp. at 2-3; Answer and Counterclaim (ECF Doc. 3-1), Ex. A (Travelers Policy) at 6 of 69. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., Ex. A (Travelers Policy) at 19 of 69.

Travelers urges that the claims in the Meelunie Complaint do not qualify as an "occurrence" under the Traveler's Policy. Opp. at 2 to 6, citing Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 249 (1979)("the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident")(citations omitted); Atlantic Mut. Ins. Co. v. Hillside Bottling Co., Inc., 387 N.J. Super. 224, 233 (App. Div.), certif. denied 189 N.J. 104 (2006)("claims that sound in breach of warranty, whether express or implied, and that are related to claims that the insured's work was faulty or that its product was defective, do not fall within the coverage provided to the insured..."); Firemen's Ins. Co. of Newark v. National Union Fire Ins. Co., 387 N.J. Super. 434 (App. Div. 2006)(defendant's claim for replacing sub-standard firewalls did not constitute an occurrence because the third party was

---

argument that the bad faith claim can be a basis for an award of punitive damages for insurer bad faith. Tr. (10/3/12) at 55-19 to -21.

- 14 -

suing exclusively for the defendant's failure to uphold the bargained-for exchange. The faulty workmanship was not, in and of itself, an 'occurrence' because there was no bodily injury or third-party property damage); Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 598 (3d Cir. 2009)(general liability insurance is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained)(applying Pennsylvania law).

Also, according to Travelers, neither the breach of contract claim, nor the claim asserting negligence in the performance of duties under the contract in the Meelunie Complaint, allege "property damage" or "bodily injury" as defined in the Policy, which it asserts is necessary to trigger coverage under the Travelers Policy. Opp. at 6.

Even if "property damage" (as defined in the Travelers Policy) were alleged, Travelers contends that exclusions *(j)(6)* and *(j)(4)* would still preclude coverage. Opp. at 6-9.

Exclusion *j(6)* provides that there is no coverage for "property damage" to:

> *(j)(6)* that particular part of any property that must be restored repaired or replaced because 'your work' was incorrectly performed on it.

Answer and Counterclaim, Ex. A (Travelers Policy) at 9 of 69 (emphasis supplied). Because exclusion *(j)(6)* applies to damage that takes place while the work was being performed, Travelers asserts that this exclusion, by itself, is a basis for denying coverage for the Underlying Action. Opp. at 7.

Exclusion *(j)(4)* seeks to exclude coverage for "property damage" to property in the "care, custody or control" of the insured. Answer and Counterclaim, Ex. A (Travelers Policy) at 9 of 69. Rejecting USA Container's contention that exclusion *(j)(4)* is inapplicable because USA Container retained PRT, a subcontractor to drum the corn syrup, Travelers asserts that none of

- 15 -

the scant New Jersey cases relating to this exclusion are dependent upon, or even address the involvement of subcontractors, (Opp. at 8), and thus, neither compel nor even suggest such a result. To the contrary, whether something is in the "care, custody or control" of the insured is fact sensitive. Id. at 8, citing Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J. Super. 478, 491 (App. Div. 1961)("We are of the opinion that what constitutes 'care, custody, or control' … depends not only upon whether the property is realty or personalty, but as well upon many other facts, such as the location, size, shape and other characteristics of the property, what the insured is doing to it and how, and the interest in and the relation of the insured and others to it"). Even though the subcontractor PRT allegedly drummed the corn syrup, Travelers concludes that:

> Travelers' investigation revealed that the product remained in USA Container's care, custody and control in that it controlled the manner in which the work was performed. Meelunie directed USA Container to advise its subcontractor how to handle the product. Both USA Container and its subcontractor were provided with the SOPs for the drumming of the product.

Opp. at 8-9, citing Moskowitz Certif., Ex. G. Travelers cites a California appellate decision applying the exclusion where a subcontractor caused the alleged damage because the insured was obligated to exercise responsibility for the entire product, and such "constructive or propriety control is all that the exclusion and the law contemplate." Opp. at 9, citing Silva & Hill Constr. Co., Inc. v. Employers Mut. Liab. Ins. Co., 19 Cal. App. 3d 914, 924-25 (2d Dist. 1971).

Travelers points out that USA Container challenges only one of the multiple reasons offered by Travelers for denying coverage and argues this challenge warrants "stripping" Travelers of its privilege claims. Opp. at 9. Aside from the other proffered basis for denying coverage, Travelers urges that "a bald allegation [of bad faith] simply does not rise to a level even approaching a justification for impinging on the privilege." Id.

- 16 -

*B.     Travelers' Responses Regarding Business Advice, Waiver and the Common Interest Doctrine.*

Travelers states that it provided a proper privilege log (identifying the author and recipient of each document as Travelers' counsel and a Travelers claim representative), along with the document type and subject matter, which is "identified as relating exclusively to analysis on USA Container's claim for coverage." Opp. at 10, citing Moskowitz Certif., Ex. A (privilege and redaction logs). Despite USA Container's contention that it seeks to pierce the attorney-client privilege in order to discover "all of the facts" on which Travelers relied upon to deny coverage, Travelers urges that there are no facts about which USA Container is unaware and the request is, in reality, a subterfuge to learn the advice and analysis of counsel with respect to those facts. Opp. at 10-11.

Travelers also states that each of the withheld documents involves communications between Travelers' counsel and Travelers' claim personnel for the "singular purpose" of securing a legal opinion on whether coverage exists. Opp. at 12. USA Container provides nothing more than its bare "belief" that at least "some" of the withheld documents "predominately reflect business oriented advice" related to Travelers' routine business. Id. Travelers posits that the argument by USA Container that it is entitled to the coverage opinions that pre-date the denial letter (as business and not legal advice) is not logical because "under this novel theory the attorney-client privilege would only attach after the event for which counsel is sought, or some legal consequence of it, actually takes place." Opp. at 12-13.

Travelers contends that each of the communications identified on the privilege log satisfies all of the elements for privilege, which has not been waived. Opp. at 13, citing In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979). USA Container's argument that Simpson waived the privilege, "overlooks the reality" that it was not her privilege to waive.

- 17 -

*C.      Travelers' Response to USA Container's Challenge Due to Its Bad Faith Claim.*

It is Travelers' position that this case is factually distinguishable from the New Jersey Appellate Division's (unreported) decision in Allstate v. Humphrey, relied upon by USA Container, and the New Jersey Supreme Court's decision In re Kozlov, 79 N.J. 232 (1979)(upon which Humphrey relied) supports the opposite result. Opp. at 15. Travelers asserts that USA Container cannot meet the Kozlov standard, which requires that the party seeking to pierce a privilege: (1) advance a legitimate need for the evidence; (2) demonstrate that the evidence is relevant and material to the issue before the court; and, (3) establish that the evidence cannot be secured from a less-intrusive source. Opp. at 15.

As to the first of these elements, Travelers notes that while USA Container asserts a "need" for this information to prove its bad faith claim, it cannot show what "need" these communications satisfy. Opp. at 15. To support its bad faith claim, USA Container must show that based upon all of the facts, when compared to the policy language, that there is no reasonable basis for the coverage determination. Id. at 16, citing Stafford v. Scottsdale Ins. Co., 416 Fed. Appx. 191, 196 (3d Cir. 2010). Importantly, opinions of counsel are "clearly irrelevant to the solution of this equation." Opp. at 16 (emphasis supplied). And, since if, as USA Container states, "the record" already establishes that Travelers acted in bad faith (Moving Brief at 14), "it is self-evident that [USA Container] has found the less intrusive avenue" to the facts it needs and, therefore, its claim for privileged information fails. Opp. at 16. If the record already shows that Travelers acted in bad faith, USA Container's argument that it "needs" the privileged communications to show that Travelers acted in bad faith seems illogical. Id.

Travelers asserts that it consistently informed USA Container of its reasons for denying coverage, even after the litigation commenced. By correspondence in June and July 2012,

- 19 -

Travelers advised USA Container of the New Jersey Appellate Division's decision in Atlantic Mutual (which Travelers views as "dispositive" of the issues).[6] Travelers questions the legitimacy of USA Container's response that it needs more discovery, including the privileged communications, especially since USA Container states that the record already supports its claim of bad faith. Opp. at 17.

D.    *Travelers' Response on the Crime/Fraud Exception.*

Travelers' essential point is that there are no facts raised or substance to support this exception to the privilege protections.[7]

E.    *Travelers' Response Regarding the Claims of Work-Product Protection.*

Travelers contends that the September 2008 email communications between Simpson and Mr. Roark (also a Travelers claim representative) are likewise protected by the work-product doctrine because they too were prepared in anticipation of the coverage litigation with USA Container. Opp. at 19. "The communication was not part of Travelers' routine investigation nor was it prepared in the regular course of business." Id. The communications concern the denial of coverage and anticipated litigation. Id.

Travelers states that the Liability Property Damage Worksheet (TRA 1047-1049) is protected by both the attorney-client privilege and the work-product doctrine because it was "prepared prior to, and in anticipation of, expected litigation arising out of the denial of coverage to USA Container." Id.

---

<sup>6</sup>    And as to which USA Container opposed Travelers' request to file a motion, because of its purported need for discovery. See Bowens Certif., Ex. C (attaching letters to then Magistrate Judge Cecchi).

<sup>7</sup>    The parts of the Opp. which attack the professionalism and integrity/ethics of counsel in raising the crime/fraud exception are omitted. Suffice it to say that Travelers' position on this theory essentially is that the claim is scurrilous, lacks specificity and is frivolous. I agree.

Travelers also asserts that these documents contain summaries of communications with Travelers' counsel and his legal opinions, which are clearly protected by the attorney-client privilege. Id.

## V.    USA Container's Reply.

### A.    *Relevance*.

USA Container cites the "liberal policy" of the Federal Rules of Civil Procedure for providing discovery of non-privileged information, and contends that the discovery of privileged documents should be compelled because "courts do not hesitate to grant insureds access to the information necessary to prove claims of bad faith or improper denial of coverage asserted against an insurance company." Reply at 2, citing United States Fire Ins. Co. v. Bunge North America, Inc., 244 F.R.D. 638, 644 (D.Kan. 2007)(insurance company's actual loss reserve amounts subject to production in suit where insured asserted claims for coverage and bad faith against liability insurers because it could lead to evidence relating to the insurers' own belief about the coverage owed and their liability)(emphasis supplied). It is USA Container's position that "whether or not USA Container has established a dispositive claim of bad faith against Travelers at this stage of the litigation, it should not be precluded from obtaining all discovery relevant to its claims." Reply at 2-3.

USA Container recites the "standard" for bad faith claims, noting that an insurer may be liable for breaching the covenant of good faith and fair dealing by its bad faith review of an insured's claim, agreeing with Travelers that to prevail on a bad faith claim the insured "must show the absence of a reasonable basis for denying benefits of the policy and the [insurer's] knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Reply at 3, citing Sebro Packaging Corp. v. Liberty Mut. Fire Ins. Co., 69 F.Supp. 2d 642, 645 (D.N.J.

- 21 -

1999)(quoting Pickett v. Lloyds); Feit v. Great-West Life & Annuity Ins. Co., 2005 WL 2665736, at *6 (D.N.J. Oct. 18, 2005)(same).[8]

USA Container states that Simpson "admitted" that if the "subcontractor exception" to "your work" exclusion applied, USA Container would be entitled to coverage, and concludes that Travelers "own admissions support the conclusion that the insurer lacked a reasonable basis for denying USA Container coverage under the Policy." Reply at 4-6 and n.6, citing Moskowitz Certif., Ex. D (deposition testimony) and Moskowitz Reply Certif., Ex. B. While Travelers offered a variety of other reasons for its denial of coverage, Travelers did not address the "subcontractor exception" or the claim adjuster's "admissions." Reply at 6.[9]

---

[8]     In response to Travelers' argument that an insurer's decision not to defend cannot provide for tort-based damages absent egregious circumstances, USA Container states the obvious -- that an insurer's obligations under the insurance policy include the obligation to provide a defense where it is owed. Reply at 3-4, citing Griggs v. Bertram, 88 N.J. 347 (1982); Danek v. Hommer, 28 N.J. Super. 68, 76 (App. Div. 1953), aff'd, 15 N.J. 573 (1954). USA Container then suggests that it is entitled to discovery of the withheld documents because "it is reasonably believed" that they are relevant to whether Travelers' refusal to defend was "egregious, especially after the insurer acknowledged the intention to do so." Reply at 4.

[9]     Exclusion (l) titled "Damage to Your Work" states that this insurance does not apply to:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Answer and Counterclaim, Ex. A (Travelers Policy) at 10 of 69. The "subcontractor exception" referred to by USA Container is the second sentence of exclusion (l). Although much is made by USA Container of the "subcontractor exception" and this exclusion (with the exception) is referenced in Travelers' denial letter, Travelers neither relied upon this exclusion nor offered it as a basis for its denial of coverage. USA Container provides no support for its rather remarkable position that an exception to an insurance policy exclusion can be converted into a grant of coverage, irrespective of other policy provisions or exclusions.

USA Container argues that Travelers' position regarding the non-applicability of Humphrey is misplaced. Reply at 6, citing Allstate v. Humphrey, 2008 WL at *4. However, USA Container agrees with Travelers that the Appellate Division, in reaching its decision, relied on the New Jersey Supreme Court decision in In re Kozlov, 79 N.J. 232, 243-44 (1979), and USA Container recites the Kozlov three-part test. Reply at 6-7.

With regard to the Kozlov analysis, USA Container urges that Travelers withheld documents relating to its coverage analysis which "are believed to be directly probative of USA Container's bad faith claim" because these documents "are likely to expose the fact that Travelers denied coverage and failed to provide a defense without basis," including its failure to consider the "subcontractor exception." Reply at 7. USA Container has a "legitimate need" for the evidence sought because Simpson "could not articulate any reason why the subcontractor exception did not apply other than to defer generally to her communications with counsel." Id. at 7, citing Moskowitz Certif. Ex. D (deposition testimony) at 51:16-21. USA Container asserts that it "cannot obtain the documents or information at issue from any other source," and therefore, in accordance with Humphrey and Kozlov, USA Container has "demonstrated its entitlement and need for the discovery at issue." Reply at 7.

*B.    USA Container's Reply to Travelers' Other Reasons for Denying Coverage.*

Remarkably, USA Container asserts that: (1) each of the reasons that asserted by Travelers in its denial are coverage are "subsumed" within the proper application of the "subcontractor exception" to the "your work" exclusion, and (2) neither the Federal Rules of Civil Procedure nor the "governing authorities" regarding Travelers' claim of privilege, require USA Container to "conclusively establish its counterclaims in order to obtain relevant discovery." Reply at 8.

- 23 -

## 1.    "Property Damage" and Exclusion (l).

Predictably, USA Container takes issue with Travelers' position that the claims do not allege "property damage" as defined in the Travelers Policy. Reply at 8, citing Opp. at 6. USA Container says Travelers, in making this argument, "appears to refer to the 'Damage to Your Work' exclusion in the Policy" that was cited in its December 19, 2008 denial letter, but Travelers "purposely avoided" the subcontractor exception to the exclusion. Reply at 8. [10]

USA Container also urges that the property damage in the Meelunie Complaint is not damage to USA Container's "work" or "operations" as defined in Section V.22 of the Travelers Policy, but instead is damage to Meelunie's corn syrup itself. Reply at 9.[11] Even if the property damage alleged was damage to USA Container's own "work," exclusion (l) does not apply where, as here, the damage was caused by USA Container's subcontractor PRT. Id. at 9. USA Container asserts that the subcontractor exception to exclusion (l) that Travelers ignored

---

[10]    Travelers' denial letter, in relevant part, states:

> To the extent that the complaint fails to allege physical injury or loss of use to tangible property other than to the work performed by or on behalf of the insured, there is no 'property damage.'

Moskowitz Certif, Ex. B (Travelers' December 19, 2008 denial letter)(emphasis supplied). USA Container in its block quote in the Reply at 8 includes the language I have italicized from the denial letter and adds in the block quote, the subcontractor exception to exclusion (l), suggesting to the unsuspecting reader that this sentence from the denial letter is part of exclusion (l). Reply at 8. In so doing, USA Container inexplicably misstates the policy language, omitting the first sentence of exclusion (l) and substituting instead a sentence from Travelers' denial letter. I will give counsel the benefit of doubt and attribute this to a word processing error. Were that not so, such a tactic would surely be wholly inconsistent with the high standards expected of counsel in litigation before a Federal Court.

[11]    Section 22 of the Definitions states: 'Your Work' means (1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations...." Answer and Counterclaim, Ex. A (Travelers Policy) at 20-21 of 69.

- 24 -

"necessarily establishes USA Container's entitlement to coverage with respect to Meelunie's claims." Id. at 9, quoting Stanley Martin Companies, Inc. v. Ohio Cas. Group, 2008 WL 704006, at *6-7 (4th Cir. 2008)(explaining the evolution of the "subcontractor exception" to the work exclusion (l)). USA Container states that Travelers in bad faith has avoided its undertaking by ignoring the subcontractor exception to the work exclusion. Id. at 10.

2.    "Occurrence."

USA Container asserts that Simpson "initially" determined that there was an "occurrence" within the meaning of the Travelers Policy (Moskowitz Certif., Ex. D), but Travelers has now taken the position that claims based upon breach of contract and faulty workmanship cannot be an "occurrence." Reply at 10, citing Opp. at 3-6.

USA Container points out that in addition to its contract claims, the Meelunie Complaint alleges negligence and sought tort damages, including loss of good will. Reply at 10, citing Meelunie Complaint at ¶¶18-20, 29-33. It is USA Container's position that the damages were the result of an alleged accident -- mishandling by the subcontractor of the corn syrup. Reply at 10. If Travelers is permitted to deny coverage for the claim on the basis that there has not been an occurrence, the insurer "would be permitted to render the subcontractor exception to the exclusion for damage to the insured's work meaningless." Reply at 10, citing A. Windt, 3 Insurance Claims and Disputes § 11:3, p. 5 (5th ed., 2010).

USA Container also contends that Travelers' reliance on the New Jersey Supreme Court decision in Weedo and the Appellate Division decisions in Firemen's v. National Union and Atlantic Mutual, are distinguishable and not controlling. Reply at 10-14.

In Weedo, faulty workmanship was specifically excluded from coverage based upon that policy's "business risk" exclusions and there was no "subcontractor exception" to the work

- 25 -

exclusion. Reply at 11, citing Weedo, 81 N.J. at 233. USA Container points out that the New Jersey Supreme Court has not ruled on whether "faulty workmanship" is, or can be, an "occurrence," and has not yet addressed the "subcontractor exception" or subcontractor's responsibility. Reply at 11.

In Firemen's v. National Union, the Appellate Division affirmed the denial of coverage because the defective workmanship did not qualify as "property damage." The Appellate Division also suggested *in dicta* that a claim of faulty workmanship does not constitute an "occurrence," but it did not decide the point. Reply at 11, citing East Coast Residential Associates, LLC v. Builders Firstsource-Northeast Group, LLC, 2012 WL 75146, at \*4-5 (N.J. App. Div. Jan. 11, 2012), certif. denied, 210 N.J. 478 (2012)(the discussion in Firemen's concerning faulty workmanship and occurrences under a general liability policy was not necessary to the court's decision).[12]

In Atlantic Mutual, the Appellate Division determined that a bottling company's general liability insurer was not required to provide coverage "[b]ecause Hillside's work in creating the carbonated beverages was defective, its claim under the Atlantic Mutual policy inescapably seeks coverage for its own faulty performance. It is therefore barred by the Weedo doctrine." Reply at 13, quoting Atlantic Mutual, 387 N.J. Super. at 235. USA Container argues that Atlantic Mutual is not controlling because USA Container itself had no role in drumming, heating or damaging the corn syrup, which work was performed entirely by its subcontractor

---

[12] In explaining the limits of its ruling in East Coast, the Appellate Division specifically refrained from addressing or deciding: (1) the meaning of an "occurrence" in a general liability insurance policy with regard to a contractor's work, and (2) the current relevance of the New Jersey Supreme Court decision in Weedo in light of the subsequent modifications to the "business risk" exclusion for damage arising from a subcontractor's work. East Coast, at \*4-5.

- 26 -

PRT and the insurance policy specifically contains an exception to the work exclusion for work performed by subcontractors. Reply at 14.

3. *Exclusion (j)(4).*

USA Container also states that exclusion *(j)(4)* is inapplicable because "[t]he corn syrup was never in USA Container's care, custody or control, and was at all times in the sole control of [PRT] -- USA Container's subcontractor." Reply at 15. USA Container asserts that Silva & Hill, 19 Cal. App. 3d at 92, relied upon by Travelers, is inapposite because in that case the contract between the insured and the claimant, expressly provided that the insured would retain ultimate responsibility over the work of its subcontractors. Reply at 15. USA Container states that there is "no such evidence in this case." Id. Instead, it points out that Travelers' own investigation confirmed that PRT was responsible for mishandling and damaging the corn syrup and PRT admitted had its responsibility for same. Id. at 15.

4. *Exclusion (j)(6).*

Finally, USA Container urges that exclusion *(j)(6)* should not apply because Meelunie did not restore, repair or replace any part of the corn syrup. Reply at 15. Instead, it mitigated its damages by selling the damaged corn syrup, at a substantially reduced price. Id. at 15. Because the corn syrup was not restored, repaired or replaced, exclusion *(j)(6)* does not apply. Id.

C. *USA Container's Reply on Business Advice and the Common Interest Doctrine.*

USA Container repeats its same arguments set forth in the Moving Brief for the proposition that the attorney-client privilege does not protect communications involving an attorney for business, as opposed to legal, advice. Reply at 16-17.

Similarly, USA Container asserts that the common interest doctrine ought not protect the Berardinelli email either, because the doctrine applies only to communications between attorneys

- 27 -

(and not the clients themselves). Reply at 18, quoting In re Teleglobe, 493 F.3d at 364 (the common interest doctrine "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others"). Because Travelers has not identified Simpson or Berardinelli as attorneys (or that they were acting on behalf of attorneys for Travelers and Chubb, respectively), any claim of privilege for the Berardinelli email should be deemed waived. Reply at 18.

*D. USA Container's Reply on the Crime/Fraud Exception.*

USA Container repeats its arguments and case law set forth in the Moving Brief at 15-16 as to the crime/fraud exception, and concludes "should this Court's *in camera* inspection reveal that the documents Travelers has withheld contain evidence of bad faith, improper denial of coverage, or withholding coverage where it was due and owing, these documents should be produced despite any assertions of privilege." Reply at 19.

*E. USA Container's Reply on the Work-Product Doctrine.*

USA Container reiterates the same arguments previously made. See Reply at 19-20 and Moving Brief at 17-19. USA Container's position is simply that it doubts the September 2008 communications (which occurred well before Travelers issued its denial letter in December 2008) concerned "thoughts, impressions and strategies" related to the declaratory judgment action it later commenced in April 2009. Reply at 19-20. USA Container urges that documents prepared in the ordinary course of the insurer's business, including documents relating to any investigation and coverage analysis, cannot be characterized as work product. Reply at 20.

**VI. Supplemental Submissions.**

Addressing my concern that the bad faith claim was being used only as a vehicle to request discovery of privileged communications (without adding any additional relief beyond

- 28 -

that afforded by the breach of contract claim), USA Container replied that the bad faith claim added the availability of punitive damages and attorney's fees. Tr. (10/3/12) at 17:4-6 and 55:5-22. citing Daloisio v. Liberty Mut. Fire Ins. Co., 754 F. Supp. 2d 707, 708 (D.N.J. 2010) and the cases referenced by Travelers in its Opp. at 1. The New Jersey Court Rule 4:42-9(a)(6), which permits attorney's fees in an action on a liability insurance policy in favor of a successful claimant, was cited as the basis for the award of attorney's fees on the bad faith claim. Tr. (10/3/12) at 17:21 to 18:13. During oral argument, I requested supplemental submissions from both parties providing authority for their respective positions on the insured's entitlement to punitive damages for a bad faith claim.

In its written submission, USA Container urged that punitive damages are available in a bad faith claim against an insurer where the insured demonstrates egregious circumstances and wantonly reckless or malicious conduct by the insurer. USA Container's Supp. at 1, citing Daloisio, 754 F. Supp. 2d at 708 (citing Polizzi Meats, Inc. v. Aetna Life and Cas. Co., 931 F. Supp. 328, 335 (D.N.J. 1996)); Mennen Co. v. Atlantic Mut. Ins. Co., 1999 WL 33654297, at *8-9 (D.N.J. Oct. 26, 1999) and Miglicio v. HCM Claim Mgmt. Corp., 288 N.J. Super. 331, 346-47 (Ch. Div. 1995).

USA Container rejected the notion that the discovery of the privileged documents to support a bad faith claim should await a ruling in favor of the insured on the coverage dispute, because Travelers had agreed in the Joint Discovery Plan that "bifurcation" was not appropriate. USA Container's Supp. at 2, citing ECF Doc. 7. USA Container also cites decisions from other district courts where a request for bifurcation of a breach of contract claim and bad faith claim was denied. USA Container's Supp. at 2, citing Rohm & Haas Co. v. Utica Mut. Ins. Co., 2008 WL 2517176, at *4 (E.D. Pa. June 23, 2008)(denying insurer's motion to bifurcate because

- 29 -

discovery on the duty to defend and bad faith claim likely will concern much of the same or related evidence); Kiskidee, LLC v. Certain Interested Underwriters, 2012 WL 1067918, at *4-5 (D.V.I. March 26, 2012)(denying bifurcation of trial on breach of contract and bad faith claim where to do so would not serve judicial efficiency because the claims involve overlapping sets of facts and evidence). Neither of these cases addressed the question presented here involving discovery of privileged documents.

In its supplemental submission, USA Container repeated arguments made in its Moving Brief and Reply Brief regarding the threshold issue of whether the documents are privileged. USA Container Supp. at 2. With regard to the Berardinelli email, USA Container contends that Travelers has failed to establish that its disclosure to Chubb of Travelers' coverage analysis and position "promoted any common interest between Travelers and Chubb." Id. at 2, citing LaPorta, 340 N.J. Super. at 262 (common interest exception requires demonstration of furthering a common interest between the parties).

Travelers relies upon the decision of the New Jersey Supreme Court, which held that bad faith claims against insurers sound more appropriately in contract than tort. Travelers' Supp. at 1, citing Pickett, 131 N.J. at 474. With regard to the availability of punitive damages, the New Jersey Supreme Court stated "[w]e agree with those courts have held that … absent egregious circumstances, no right to recover … punitive damages exists for an insured's allegedly wrongful refusal to pay a first-party claim." Id., quoting Pickett, 131 N.J. at 476. It is incumbent on the claimant to demonstrate facts which establish that egregious circumstances exist. Id. at 1, citing Commercial Door & Hardware v. Hanover Ins. Co., 2008 N.J. Super. Unpub. LEXIS 2347, *5-6 (App. Div. Feb. 5, 2008).

- 30 -

Travelers distinguishes the decision in Daloisio from the case at bar, noting that Judge Irenas held that "[t]he burden to sustain a claim for punitive damages is heavy - the insured must show egregious circumstances and wantonly reckless or malicious conduct on the part of the insurer." Travelers' Supp. at 1, citing Daloisio, 754 F. Supp. 2d at 710. Travelers states: "Nothing [USA Container] has produced comes close to meeting the requirements of the very case it relies upon. The counterclaim is devoid of any factual allegation which would rise to the level of an 'egregious circumstance' and simply asserts the defendants' claim of entitlement to coverage." Travelers' Supp. at 2.

As support for its showing of "good faith" claims handling, Travelers attaches a letter dated March 20, 2009 from Travelers' counsel to USA Container's counsel in which Travelers offered a sum towards the settlement of the Meelunie Complaint and would consider a contribution toward USA Container's defense costs, with a reservation of rights to recover both payments in the event a declaratory judgment action determines that there is no coverage. Travelers' Supp. at 2. This offer was rejected by USA Container. Id. Travelers' asserts that it is not logical "to describe an offer to help fund the claim against it pending judicial review of its coverage position as an 'egregious circumstance.'" Id.

Finally, Travelers states that any claim for counsel fees for the declaratory judgment action is without merit because there is "no federal analogue" to the New Jersey Court Rule (R. 4:42-9(a)(6)) which permits an award of counsel fees to successful claimants in an action upon a liability insurance policy. Travelers' Supp. at 2, citing Du-Wel Products, Inc. v. United States Fire Ins. Co., 236 N.J. Super. 349, 362-63 (App. Div. 1989), certif. denied, 121 N.J. 617

(1990)(counsel fee rule is a procedural rule available to successful claimants in New Jersey courts).[13]

## VII. Recommendation.

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action," although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Courts should not order discovery if the information being sought is (a) irrelevant to the claim or (b) protected by a recognized privilege.

### A. Relevance.

USA Container's Counterclaim asserts breach of contract (First Count) and bad faith (Second Count). The same relief is sought in both Counts -- that being: (a) declaration that USA Container was entitled to insurance coverage for the Underlying Action; (b) compelling Travelers to indemnify USA Container for the settlement of the Underlying Action; (c) compelling Travelers to reimburse USA Container for the defense costs for the Underlying Action and for this coverage action and (d) awarding such other relief that the Court deems just and equitable. See Answer and Counterclaim at 8-10.[14]

---

[13]    As noted infra, the suggestion by USA Container that attorney's fees would be additional relief only available for the bad faith claim is flawed. Even if the New Jersey Court Rule 4:42-9(a)(6) were applicable, pursuant to that Rule, the determination of whether to award counsel fees is based, not upon bad faith, but only upon whether there is coverage.

[14]    Although counsel urges that the bad faith claim could also support a claim for punitive damages and attorney's fees, this relief was not sought in the Counterclaim.

- 32 -

### 1.   Breach of Contract Claim.

Despite USA Container's assertion generally that the privileged documents sought here may bear on both its breach of contract claim as well as on its bad faith claim, the arguments in the Moving Brief and the Reply supporting the motion to compel all appear to be focused solely on the bad faith claim. At oral argument, counsel for USA Container asserted that Travelers' communications and efforts to seek an attorney's legal opinion, as well as that attorney's coverage opinion, may be probative of or reasonably calculated to lead to the discovery of admissible evidence on whether insurance coverage exists for the Underlying Action. There is no authority for such a proposition. Whether or not the Travelers Policy provides coverage for the claims in the Underlying Action is a judicial determination. I am unable to conclude that the opinions of counsel (or the opinion of the Travelers' former claim representative) are in any way relevant or reasonably calculated to lead to admissible evidence with regard to the merits of the insurance coverage dispute.

### 2.   Bad Faith Claim.

The next question is whether the allegations of insurer bad faith, standing alone, can support the discovery requested. In this case, the parties appear to agree that the applicable legal standard is set forth in Pickett v. Lloyd's, 131 N.J. 457, 473 (1993). See Moving Brief at 14, citing Pickett and Opp. at 1, citing Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc., 2010 U.S. Dist. LEXIS 112640, at *11 (D.N.J. Oct. 21 2010)(quoting Pickett).

The New Jersey Supreme Court in Pickett adopted the standard embraced by many jurisdictions. That is "[i]f a claim is 'fairly debatable,' no liability [for bad faith] will arise." Pickett, 131 N.J. at 473 (citation omitted).

> "To show a claim of bad faith, [the insured] must show the absence
> of a reasonable basis for denying benefits of the policy and the

> [insurer's] knowledge or reckless disregard of the lack of a
> reasonable basis for denying the claim. It is apparent, then, that
> the tort of bad faith is an intentional one. *** implicit in that test is
> our conclusion that the knowledge of the lack of a reasonable basis
> may be inferred and imputed to an insurance company where there
> is a reckless *** indifference to facts or to proofs submitted by the
> insured."

Id. at 473 (citation omitted). See also Universal-Rundle Corp. v. Commercial Union Ins. Co.,
319 N.J. Super. 223, 250-251 (App. Div.)(applying "fairly debatable" standard in Pickett to a
third-party claim), certif. denied 161 N.J. 149 (1999); Hudson Universal, Ltd., v. Aetna Ins. Co.,
987 F.Supp. 337 (D.N.J. 1997)(same). "Under the 'fairly debatable' standard, a claimant who
could not have established as a matter of law a right to summary judgment on the substantive
claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim."
Pickett, 131 N.J. at 473.

Travelers states that the allegations of bad faith, standing alone, cannot be a basis for
compelling discovery of the privileged documents under the standard set forth in Pickett. Opp.
at 1. Even if USA Container were correct in stating that the "subcontractor exception" to the
work exclusion *(l)* applies because the work was done by PRT, other valid bases were offered in
denying the claim. Opp. at 2 to 9. Because Travelers has not yet explained its legal position on
the "subcontractor exception" and USA Container has responses to Travelers' other reasons for
its denial of coverage, USA Container urges that it has a presented *prima facie* case of bad faith
so as to support the discovery (and relevancy) of the privileged documents. Tr. (10/3/12) at
35:24 to 37:8. Even if USA Container has legitimate responses to Travelers' coverage position,
such arguments cannot themselves satisfy the Pickett standards to prove (or establish a *prima
facie* case) that Travelers' coverage position lacked a reasonable basis and was made in bad faith.
Also of note, USA Container is not seeking discovery of the facts that support Travelers' legal

- 34 -

position, but rather it is seeking Travelers' legal theory as to why the "subcontractor exception" by itself does not require Traveler to provide coverage for this claim. Tr. (10/3/12) at 74:14-22. Travelers agreed that the facts themselves that support this position are not in dispute. Tr. (10/3/12) at 67:21-23.

Astonishingly, USA Container insists that a bad faith claim for an insurer's failure to defend can exist even if there is no coverage. Tr. (10/3/12) at 13:18-25 citing Danek v. Hommer, 28 N.J. Super. 68 (App. Div. 1953), aff'd 15 N.J. 573 (1954). While the Appellate Division in Danek discussed an insurer's obligation to defend groundless claims by an injured party against the insured, the Appellate Division did not address bad faith claims by the insured against the insurer. Indeed, it seems axiomatic and beyond legitimate dispute that if there is no coverage (or exceptional facts not pled here), a denial of coverage can never have been in "bad faith." As explained by Judge Politan, "[i]t is clear that the determination of whether an insurance company has acted in bad faith requires, as a predicate, a determination that coverage exists for the loss claimed by the insured." Hudson Universal, 987 F. Supp. at 342 n.3 (emphasis supplied).[15]

Although it contends that a bad faith claim would support a claim for punitive damages. Tr. (10/3/12) at 55, USA Container has conceded in its supplemental submission that egregious

---

[15]     In its supplemental submission, USA Container cited Rohm and Haas Co. v. Utica Mut. Ins. Co., 2008 U.S. Dist. LEXIS 48077 (E.D.Pa 2008) where the District Court recognized the general rule that "a bad faith claim based solely on an underlying contractual claim generally will fail if a court or jury determines that the insurer did not have a duty to defend." Id. at *6. However, the district court denied an insurer's request for bifurcation based upon a line of Third Circuit cases, which found that there were "limited areas" where a bad faith claim could exist independent of the contract claim. Id. at *7-9. The Rohm & Haas Court found that in that case the bad faith claim was based on more than the wrongful failure to defend -- the insurer was alleged to have acted in bad faith by its failure to investigate the claim and because its use of the investigation was in reality an attempt to "to obtain a head start in litigation discovery." Id. at *12-13. I am not persuaded that these exceptions to the general rule apply here, nor has USA Container so pled.

- 35 -

circumstances and wantonly reckless or malicious conduct are required. USA Container's Supp. at 1. Here, the pleading is devoid of any such allegation (much less a *prima facie* showing), of any egregious circumstances or wantonly reckless or malicious conduct that could validly support a claim for punitive damages under New Jersey law. See Johnson v. Liberty Mut. Ins. Co., 2010 U.S. Dist. LEXIS 63043, at \*7 (D.N.J. June 24, 2010) (in addition to dismissing the bad faith claim for failing to set forth a sufficient factual basis, Judge Cooper dismissed the claim for punitive damages noting that the pleading "lacks factual allegations that would permit the Court to reasonably infer that the [insurer's] conduct has been wantonly reckless or malicious").

USA Container also urges that the bad faith claim provides a basis for attorney's fees under New Jersey's Court Rule 4:42-9(a)(6). Tr. (10/3/12) at 17:4 to 18:13. Predictably, Travelers disagrees. Travelers' Supp. at 2. Without deciding whether or not the New Jersey Court Rule's fee-shifting provision can or would be applied by the federal court (as suggested by USA Container), any award of attorney's fees under Rule 4:42-9(a)(6) is dependent solely upon whether USA Container is a prevailing party on the merits of the coverage dispute, and is completely unrelated to the insurer's bad or good faith.

Distilled to its most basic terms, if USA is compensated on its breach of contract claim, the bad faith claim adds nothing. In as much as no additional relief can be obtained from the bad faith claim, and since discovery sought here is relevant only to the bad faith claim, it becomes readily apparent that the only purpose in asserting the bad faith claim was to obtain discovery that otherwise would not be available.[16]

---

[16]     Notably, USA Container has not been precluded from seeking discovery regarding its bad faith claim, but now seeks to extend its reach to privileged documents indicating that "courts do not hesitate to grant insureds access to the information necessary to prove claims of bad faith or improper denial of coverage asserted against an insurance
*(footnote continued on next page)*

Without considering either the merits of the parties' positions on whether or not coverage exists or the merits of the bad faith claim (e.g., whether the coverage question was "fairly debatable"), I conclude (and so recommend) that the mere existence of a claim alleging insurer bad faith cannot, standing alone, be the sole basis for obtaining privileged documents, which would not otherwise (if bad faith was not pled) be relevant or be reasonably calculated to lead to the discovery of admissible evidence.[17]

Nonetheless, in the interest of completeness (and to the extent the Court rejects, in whole or in part, this recommendation on appeal), I am compelled to address the merits of the claimed attorney-client and work-product privileges and the opposition thereto.

## B.    Privilege and Work-Product Analysis.

A federal court exercising jurisdiction of state law claims, must apply state law to questions of privilege. Fed. R. Evid. 501. See United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 965 (3d Cir. 1988). Similarly, application of the common interest doctrine is governed by state law. In re Teleglobe Communications Corp., 493 F.3d 345, 358 (3d Cir. 2007); McLane

---

company." Reply at 2, citing United States Fire Ins. Co. v. Bunge North America, Inc., 244 F.R.D. 638, 644 (D.Kan. 2007). However, Bunge involved discovery of reinsurance information and loss reserves, and the Kansas District Court did not require production of the insurer's privileged communications. Id. at 645. At the end of the day, I am satisfied that the disclosure of privileged documents cannot be compelled on the mere assertion of a bad faith claim prior to an adjudication on the merits of the coverage action.

[17]    If the Magistrate (or the District) Judge(s) determine that the mere of pleading of a bad faith claim can validly subject privileged communications to disclosure as requested here, a better approach may be to defer such discovery until either the favorable adjudication of a summary judgment motion or a plenary adjudication that the insured was entitled to coverage and that the insurer's coverage position in concluding to the contrary was not reasonably debatable. While I recommend that approach as sound and consistent with legal and judicial economy, as Special Master I cannot require it. Such procedural issues are vested exclusively with the Court.

Foodservice, Inc. v. Ready Pac Produce, Inc., 2012 U.S. Dist. LEXIS 76343, at \*8-10 (D.N.J. June 1, 2012). Although both state and federal law is cited in the briefing, counsel agreed that New Jersey law governs the attorney-client privilege and common interest doctrine. Tr. (10/3/12) at 23:3-7, 35:18-24. While state law governs privileges, Fed.R.Civ.P. 26(b)(3) governs the work-product doctrine. United Coal, 839 F.2d at 966.

## *1.     Attorney-Client Privilege.*

N.J.S.A 2A:84A-20 and N.J.R.E. 504 provide, subject to certain limited exceptions, that:

> [C]ommunications between lawyer and his client in the course of
> that relationship and in professional confidence, are privileged, and
> a client has a privilege (a) to refuse to disclose any such
> communication, and (b) to prevent his lawyer from disclosing it....

For a communication to be protected under N.J.R.E. 504, it must have been made in confidence between a lawyer and his or her client in the course of the professional relationship. In re Grand Jury Subpoenas Duces Tecum, 241 N.J. Super. 18, 30 (App. Div. 1989); United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561-62 (App. Div. 1984); Macey v. Rollins Environmental Services (N.J.), Inc., 179 N.J. Super. 535, 539 (App. Div. 1981). The party asserting the attorney-client privilege bears the burden to show that it applies. Rivard v. American Home Products, Inc., 391 N.J. Super. 129, 152 (App. Div. 2007)(party asserting a privilege must provide a specific explanation of why each document is privileged or immune from discovery).

The attorney-client privilege extends to corporations. N.J.R.E. 504(3). See Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 550 (1997)(a corporation can be a "client" for purposes of the attorney-client privilege); Macey, 179 N.J. Super. at 540 ("[t]he privilege unquestionably extends to corporations which must act through agents, including its officers and employees" ). The privilege applies to "confidential communications made within the context of the strict relation of attorney and client." Wolosoff, 196 N.J. Super. at 562.

It is also established that the attorney-client privilege applies to communications between a corporation's employee and its in-house counsel for purposes of legal advice. Documents prepared as part of and in furtherance of the duties of an in-house counsel, who was retained to provide professional legal advice to a corporation are covered by the attorney-client privilege unless an exception applies. National Util. Serv., Inc. v. Sunshine Biscuits, Inc., 301 N.J. Super. 610, 615 (App. Div. 1997). See also Macey, 179 N.J. Super. at 540-41 (employee's 10-page statement concerning the fire and explosion prepared at the behest of and for his employer's general counsel was protected from disclosure based upon the attorney-client privilege).

Conversely, the attorney-client privilege does not protect an investigation by counsel that is for a purpose other than preparing for litigation or providing legal advice. Payton, 148 N.J. at 551 (when an attorney conducts an investigation for a corporate client, the privilege is only applicable if its purpose is to prepare for litigation or to provide legal advice); Metalsalts Corp. v. Weiss, 76 N.J. Super. 291, 299 (Ch. Div. 1962)(when a lawyer serves as a corporate agent for the purpose of conducting an intra-corporate investigation, the attorney's actions are not peculiarly within the province of an attorney at law, and communications of corporate employees made to the lawyer while engaged in that activity would not be privileged).[18]

USA Container states that there are four grounds for piercing the attorney-client privilege in this case: (1) the communications reflect business and not legal advice; (2) the privilege was waived by disclosure to a third party; (3) USA Container has claims against Travelers for bad

---

[18]     USA Container cites decisions of the New Jersey District Court which distinguish between legal and business advice saying communications which are related to business rather than legal matters do not fall within the protection of the privilege, including Leonen, 135 F.R.D at 98; Sealed Air, 253 F.R.D. at 305; and Munich Reinsurance, 2011 WL 1466369, at *18 (citing Leonen, Sealed Air and others). While the decisions of the New Jersey state courts are not as specific, their analysis requiring that the role of the attorney being for professional legal advice is the essentially same as in these federal court decisions.

faith in denying coverage; (4) the crime/fraud exception applies. Each of these arguments, along with Travelers' responses, is addressed below.

### *(1) Business advice.*

USA Container asserts that the attorney-client privilege protection should not apply to the insurance coverage analysis/reports prepared prior to Travelers' declination of coverage or prior to initiation of this lawsuit because the insurer's investigation of a claim or coverage, and reports analyzing coverage are made in the ordinary course of the insurer's business, and therefore, are for business, and not legal advice. Moving Brief at 11-12, citing Westwood Products, Inc. v. Great American E&S Ins. Co., 2011 WL 3329616, at *12 (D.N.J. Aug. 1, 2011), quoting Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 190 F.R.D. 532, 537-38 (S.D.Ind. 1999); Brooklyn Union Gas Co. v. American Home Assurance Co., 803 N.Y.S.2d 532, 534 (1st Dep't 2005); AIU Ins. Co. v. TIG Ins. Co., 2008 WL 4067437, at *10-11 (S.D.N.Y. Aug. 28, 2008); and Mission Nat. Ins. Co. v. Lilly, 112 F.R.D. 160, 164 (D.Minn. 1986).

The cases cited by USA Container do not stand for so broad a proposition. Both Westwood and Goodyear address only investigation of a claim as "work product." The "attorney-client" privilege was not addressed. The New York court in Brooklyn Union Gas found that the insurer failed to provide a detailed explanation to establish why the information is privileged, and the court's review of the documents revealed that the insurer's attorneys were "acting as claims investigators, not attorneys...there [was] no legal advice, no legal recommendations or attorney thought processes revealed..." Id. at 534. Similarly in Mission the attorneys were retained as the claim adjusters to handle the investigation of a fire loss, so that the District of Minnesota found that the vast majority of the documents submitted under claim of privilege constituted pure factual investigation, which did not qualify for protection under the

work-product doctrine. Id. at 163-164. In AIU v. TIG, the Magistrate Judge of the Southern District of New York carefully reviewed the documents to determine whether they were business communications or contained business advice, as opposed to legal advice. Id. at *10-11.

USA Container points to the documents listed on Travelers' Privilege Log rows 3, 5, 7, 9 (created prior to the December 19, 2008 denial letter) and in rows 10 to 18 (created prior to the filing of the Complaint in April 2009) as the documents which it believes are predominately business-oriented advice, as opposed to legal advice. Travelers states that each of the withheld documents involves privileged communications for the "singular purpose" of securing an attorney's opinion on coverage, and there is no support for USA Container's belief that the documents are "predominately" for business instead of legal advice.

I reviewed, *in camera*, each of these documents carefully and find that the attorney-client privilege attaches to those documents where the attorney-client privilege protection was claimed, except the following documents should be produced: **(1)** TRA 1047-1049 (which may be redacted as set forth in Appendix A below); **(2)** TRA 1069; **(3)** TRA 1072-1073 (the email dated 2/5/09 from outside counsel may be redacted as set forth in Appendix A); **(4)** TRA 1074; and **(5)** the typed portion of TRA 1104 (which may be redacted as set forth in Appendix A). [19]

    *(2)    Waiver/Common-Interest Doctrine.*

USA Container also contends that the attorney-client privilege was waived because of disclosure of Travelers' coverage opinions and/or analysis to Chubb, via the Berardinelli email from Simpson to Berardinelli at Chubb (TRA 1029-1031). Travelers urges that the privilege was

---

[19]    Included in Appendix A is a description of each withheld or redacted document on the privilege and redaction logs and the rationale for my ruling. Appendix A also addresses certain attachments to TRA 1037-1038, TRA 1039-1042 and TRA 1065-1066, which were not included in the documents provided or listed on the privilege log.

not Simpson's to waive, and her generalized discussion with Chubb does not constitute an intentional or knowing waiver of by Travelers of its attorney-client privilege. Opp. at 13.

Moreover, Travelers asserts the common-interest doctrine applies and equally protects the confidentiality of the documents because Chubb was the excess carrier whose interests were "identical to Travelers" regarding the coverage dispute. Opp. at 14.  Travelers states that as the primary insurer, it has a "duty to Chubb to keep it apprised of the status of the claim and its coverage determination with respect to it. Both carriers were analyzing their respective coverage obligations, which turned largely on the Travelers Policy language…" Opp. at 14.

Generally, the voluntary disclosure of a privileged communication to a third party or adversary waives the attorney-client and work-product protections. See, e.g., In re State Com. of Investigation, 226 N.J. Super. 461, 466 (App. Div.), certif. denied, 113 N.J. 382 (1988). "But courts have interpreted [the waiver] principle in a commonsensical way, fashioning a 'common interest' doctrine which protects communications made to a non-party who shares the client's interest." Id. at 466 (addressing the common interest doctrine with regard to attorney-client communications). See also LaPorta v. Gloucester County Bd. of Chosen Freeholders, 340 N.J. Super 254, 261-262 (App. Div. 2001)(addressing the common-interest doctrine with regard to work product). The common interest doctrine (also referred to as the common interest exception, common interest privilege, community-of-interest doctrine and common interest rule) does not create a new or separate privilege but instead prevents waiver of the attorney-client privilege and work-product protection, when otherwise privileged communications are shared with a third party who shares the client's interest. McLane Foodservice, 2012 U.S. Dist. LEXIS at *2, *12.

In LaPorta, a wrongful termination and retaliation action by a county employee where the employee claimed that adverse counsel waived the work-product protection when he communicated the information to the prosecutor's office, Judge Keefe stated:

> The common interest exception may be asserted with respect to communications among counsel for different parties if "(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." .... It is not necessary for actual litigation to have commenced at the time of the transmittal of information for the privilege to be applicable. ... Indeed, communications need not only be among counsel for the clients. Communications between counsel for a party and an individual representative of a party with a common interest are also protected.
>
> Importantly, it is not necessary for every party's interest to be identical for the common interest privilege to apply. Rather, the parties must simply have a "common purpose."

Id. at 262 (citations omitted).[20] "The question as to whether the parties share a common interest 'must be evaluated as of the time that the confidential information is disclosed.'" Id. at 263 (citation omitted). The Appellate Division found "when such privileged information is turned over to a non-adversary who has a legitimate interest in the information,.... there is no waiver unless it can be shown that there was a 'conscious disregard' of the possibility that an adversary would gain access to the material." Id. at 263. Because there was no showing that the county counsel "consciously disregarded" the possibility that materials might be transmitted to plaintiff and he had every reason to believe his mental impressions would remain protected, the Appellate Division found that there was no waiver of privileged information by its disclosure to a third party. Id. at 264.

---

[20] Even though the analysis in LaPorta was in the context of attorney work product, this analysis of the common interest doctrine is also used for attorney-client communications. Holland v. Island Creek Corp., 885 F. Supp. 4, 6 (D.D.C. 1995)(relied upon in LaPorta).

- 43 -

In disputing the doctrine's applicability, USA Container points out that neither Simpson nor Berardinelli are attorneys. Reply at 18, citing In re Teleglobe Communications Corp., 493 F.3d 345, 364-65 (3d Cir. 2007)(applying Delaware law)("the requirement that the clients' separate attorneys share information (and not the clients themselves) derives from the community-of-interest privilege's roots in the old joint-defense privilege, which (to repeat) was developed to allow *attorneys* to coordinate their clients' criminal defense strategies"). The "attorney-sharing requirement" helps prevent abuse by clients of the common interest exception to the general rule that disclosure to third parties will constitute a waiver of the privilege. Id. at 365.

However, the New Jersey rule is broader than that set forth in Teleglobe. In New Jersey, the communications need not be only among counsel for the clients. LaPorta, 340 N.J. Super. at 262, citing United States v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990). This distinction was noted by Magistrate Judge Arpert in Munich Reinsurance, 2011 WL 1466369 at *21. As set forth in LaPorta, "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute and defend their claims." LaPorta, 340 N.J. Super at 262-63 (emphasis supplied)(citation omitted).

The redacted information in the Berardinelli email contains the legal opinion of Travelers' counsel and the basis for that opinion, which was unquestionably privileged while in the hands of Simpson. While I am certainly mindful of the potential for abuse (by clients) of the common interest doctrine, the proffered reason for disclosure was that Travelers, the primary insurer, was legally obligated to inform Chubb of the status of the claim along with Travelers'

- 44 -

coverage position.[21]  Under the broader interpretation of the rule set forth in LaPorta, the fact that the transmittal of the privileged information was by the client to a non-lawyer does not undermine application of the common interest rule.  See also Schwimmer, 892 F.2d at 244 (common interest rule applied to information provided directly *by client* to the accountant retained for joint defense).

With the guidance of the "commonsensical approach" adopted by the New Jersey courts, and having reviewed *in camera* each of the documents, (while mindful that Travelers and Chubb's interests are not entirely identical in all respects) I am satisfied that the substance of the Berardinelli email was intended to support a "common purpose" between the insurers with regard to USA Container's insurance coverage claim.  Indisputably, Chubb (as the excess insurer) was entitled to know the primary insurer's coverage position and the basis for the opinion.  No evidence has been adduced demonstrating any "conscious disregard" that the information would be transmitted to the insured or any other adversary.  Accordingly, transmittal of the Berardinelli email containing the one sentence coverage position of Travelers' counsel and the basis for that position will not justify a finding that the privilege protection was waived.

---

[21]     New Jersey courts have recognized: "The primary insurer has certain duties and obligations that it owes to the excess insurer as a result of the distinctive relationship between the two carriers. The unique relationship results because the excess insurer relies upon the primary carrier to act in good faith in processing claims.  This includes reliance upon a primary carrier to act reasonably in: (1) discharging its claims handling obligations; (2) discharging its defense obligations; (3) properly disclosing and apprising the excess carrier of events which are likely to effect that carrier's coverage; (4) safeguarding the rights and interest of the excess carrier by not placing the primary carrier's own interests above that of the excess insurer."    American Centennial Ins. Co. v. Warner-Lambert Co., 293 N.J. Super. 567, 575-76 (Law Div. 1995); Baen v. Farmers Mut. Ins. Co., 318 N.J. Super. 260, 267 (App. Div. 1999); General Accident Ins. Co. v. New York Marine and General Ins. Co., 320 N.J. Super. 546, 555-56 (App. Div. 1999).

- 45 -

*(3)     Using a Bad Faith Claim to Pierce the Privileges.*

Noting that the attorney client privilege is "exceedingly important," but not sacrosanct, the New Jersey Supreme Court in In re Kozlov set forth three "necessary foundations" that must be established by the party seeking to pierce the attorney-client privilege: (1) a legitimate need by the party to reach the evidence sought to be shielded; (2) a showing of relevance and materiality of that evidence to the issue before the court; and (3) by a fair preponderance of the evidence, the information cannot be secured from any less intrusive source. In re Kozlov, 79 N.J. 232, 243-44 (1979).

The New Jersey Supreme Court has since described the Kozlov exception as involving "circumstances so grave ...that the privilege must yield to the most fundamental values of our justice system." In re Nackson, 114 N.J. 527, 532 (1989). The Appellate Division also cautioned that a "literal application of the Kozlov test is inappropriate without an appreciation that only compelling, that is 'grave' circumstances, will justify piercing the privilege." See Dontzin v. Myer, 301 N.J. Super. 501, 511 (App. Div. 1997)(citing Nackson). "Kozlov did not abolish the privilege or relegate it to the status of a pedestrian discovery dispute." Id. at 508. A Kozlov application "requires a greater showing than that the invasion will possibly produce admissible evidence." Id. at 510 (citation omitted).

As acknowledged by the New Jersey Supreme Court, most cases applying Kozlov have upheld the attorney-client privilege. Kinsella v. Kinsella, 150 N.J. 276, 299 (1997)(listing cases). The typical setting in which the attorney-client privilege has not been sustained under Kozlov is "where the party claiming the privilege has implicitly waived it by putting the confidential communications 'in issue' in the litigation." Kinsella, 150 N.J. at 300. The seminal case is United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 563-68 (App. Div. 1984) where the

bank sought rescission of a settlement agreement on the grounds that the defaulting borrower fraudulently misrepresented his assets during the settlement negotiations, and the borrower sought access to the privileged communication to rebut the bank's assertion that the bank relied on the borrower's representations. Id. at 558-560. The Appellate Division held that the attorney-client privilege was pierced in recognition of the "inherent inequity" that would result if the bank were permitted "to use the privilege as a sword rather than a shield," concluding "'when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege'" Id. at 567 (citations omitted).

USA Container relies heavily upon the Appellate Division decision in Allstate New Jersey Ins. Co. v. Humphrey, 2008 WL 382666 (N.J. App. Div. Dec. 14, 2008) in urging that the attorney-client privilege "will not shield from production those documents or materials in the possession of an insurer that relate to the bad faith claims of an insured." Moving Brief at 14. See also Reply at 6.[22] The unreported decision in Humphrey is not controlling law. Compare Spiniello Cos. v. Hartford Fire Ins. Co., 2008 U.S. Dist. LEXIS 53509, at *17-20 (D.N.J. July 14, 2008)(Magistrate Judge Falk predicted that the New Jersey Supreme Court would not adopt a blanket exception to the attorney-client privilege in bad faith insurance cases, in part because of the "chilling effect" on the insurance companies' ability to seek legal advice), cited with

---

[22]     In Humphrey, Allstate refused to produce its claim files for the defense of the underlying action and for the insurance coverage action on grounds of attorney-client privilege and the work-product doctrine. Without addressing each Kozlov factor separately, the Appellate Division stated: "These requirements are manifestly met as the result of the Bellinos' assertion of bad faith, which can be proven, if at all, only through evidence under Allstate's control." Humphrey, 2008 WL 382666 at *4. The Appellate Division in Humphrey applied the same standard to the insurer's claim of protection under the work-product doctrine under R. 4:10-2(c), but stated that the production of work product would be "subject to the protections for 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party' provided by that rule." Id. at *4. Humphrey did not address what would happen if it were determined that no coverage existed in the first place.

- 47 -

approval by the District Court in Gingham v. Liberty Mut. Fire Ins. Co., 2010 U.S. Dist. LEXIS 32234, at \*18 (D.N.J. March 26, 2010).

"New Jersey courts have declined to treat the 'in issue' doctrine as operating automatically based on the cause of action pled. Instead they have used Kozlov's three-part test to limit the waiver in scope to that which is necessary to serve the 'public interest' according to the facts of the case." Kinsella, 150 N.J. at 301, citing as one of several examples In re Envtl. Ins. Actions, 259 N.J. Super. 308, 318-19 (App. Div. 1992)(applying Kozlov and holding that insureds in a declaratory judgment action against insurers must disclose work-product prepared at the direction of the insureds' attorneys in underlying litigation only where the insurers showed substantial need and undue hardship).

After an analysis of Kozlov, Wolosoff and consideration of the argument by the insurers that the insureds put their conduct and knowledge in issue by filing the declaratory judgment action, the Appellate Division in In re Envtl. concluded:

> Thus, we hold [the insureds] must provide discovery as to all material facts in both cases, but need not disclose communications with their attorneys (including in house counsel) in either the underlying or the present [coverage] case. Any work product developed at the request of their attorneys in anticipation of any trial may only be discovered upon a showing of substantial need and undue hardship as set forth in R. 4:10-2(c) and Kozlov. Non-disclosure of impressions, conclusions, opinions and theories of their attorneys must be honored. An exception occurs when the confidential communication itself becomes a material issue in the litigation. In such case, resolution of the discovery requests as to information alleged to be privileged must be decided by the trial judge in an *in camera* review of the disputed materials.

Id. at 319-320 (emphasis supplied).

Here, USA Container has not established that the confidential communication itself has become a material issue in the litigation. USA Container asserts that:

    \*      It appears that Travelers withheld documents that "are believed to be directly probative of USA Container's bad faith claim," urging that the documents are likely to expose the fact that "Travelers denied coverage and failed to tender a defense without basis, including its failure to give due and proper consideration of the application of the subcontractor exception."

    \*      USA Container believes the discovery is likely to "further expose" why Travelers' reasons for denying coverage are without merit.

Reply at 7. Neither of the proffered reasons causes the confidential communications to be placed in issue in this case (either by Travelers or by USA Container). [23]

USA Container also states that it has a legitimate need for the evidence sought because Simpson "could not articulate why the subcontractor exception did not apply other than to defer generally to her communications with counsel." Reply at 7, citing Moskowitz Certif., Ex. D (Simpson Dep. Tr. (1/17/12) at 52:16-21) which states:

> Q.    Was it your decision to deny coverage or was it
> someone else's decision to deny coverage?
>        \*    \*    \*
> A.    It was my decision after consultation with counsel.

Dissatisfied with the answers of the claim representative, USA Container now urges that it cannot obtain the documents or information from any other source. Reply at 7. However, USA Container offers no basis for concluding that the claims representative's discussions with counsel

---

[23]    While Travelers' counsel would not commit during oral argument as to whether or not it would rely upon advice of counsel to show that it had a reasonable basis for denying coverage, Tr. (10/3/12) at 43:18 to 50:19, based upon the briefing, oral argument and my *in camera* review of the documents, this appears unlikely. To the extent that Travelers does rely upon "advice of counsel" as a defense to the bad faith claim, the privileged communications may be put "in issue" and thus potentially require re-examination by the Court.

prior to making a decision on coverage justify a further inquiry into the privileged communications.

Other than vague generalities, USA Container has shown neither the requisite specificity nor a legitimate need for privileged communications, or, more importantly, why the privileged communications are relevant and material to the bad faith claim. If the standard to meet these two prongs of the Kozlov test was simply a desire to learn more or to obtain supplemental information about the case through privileged communications, then potentially all discussions with counsel would satisfy these two parts of the Kozlov test, and the exception to the privilege would quickly overcome the rule. As distinguished from Humphrey, USA Container and Travelers have exchanged documents, and USA Container has taken the deposition testimony of Travelers' claim representative Simpson, which all are less intrusive sources of information to support the bad faith claim. Travelers agreed that the facts asserted by USA Container with regard to the claim are undisputed. Tr. (10/3/12) at 67:21-23. If USA Container believes that it requires additional information about the basis for Travelers' coverage determination, other less intrusive avenues of discovery are available, such as requests for admissions or a deposition of a corporate designee. With all factors considered, the circumstances here are neither so grave nor so compelling as to cause a loss of the attorney-client privilege.

*(4)    Crime/Fraud Exception.*

The attorney-client privilege does not extend to communications in the course of legal service sought or obtained in the aid of commission of a crime or fraud. N.J.R.E. 504(2). The New Jersey Supreme Court instructed that:

> In deciding whether the "crime or fraud" exception applies, the relevant factor to consider is whether the client consulted with the attorney in order (1) to aid the "in the commission of any crime"; (2) to enable the client "to avoid any criminal investigation or

> proceeding pending at the time the advice was given"; or (3) to
> assist the client to "avoid lawful process in any proceeding pending
> at the time the advice was given. ...

In re Nackson, 114 N.J. 527, 535 (1989)(citations omitted). New Jersey courts have interpreted

the exception broadly. See Fellerman v. Bradley, 99 N.J. 493, 503 (1985)("Acts constituting

fraud are as broad and as varied as the human mind can invent. Deception and deceit in any

form universally connote fraud. Public policy demands that the 'fraud' exception to the

attorney-client privilege ...be given the broadest interpretation")(citation omitted). See also

Ocean Spray Cranberries, Inc. v. Holt Cargo Systems, Inc., 345 N.J. Super. 515, 522 (Law Div.

2000)(crime/fraud exception encompasses "virtually all kinds of deception and deceit, even

though they might not otherwise warrant criminal or civil sanctions").

The burden of establishing the elements of the crime/fraud exception is upon the person

seeking to overcome the privilege. National Utility Service, Inc. v. Sunshine Biscuits, Inc., 301

N.J. Super. 610, 618 (App. Div. 1997). The person seeking access to the communication must

present a *prima facie* case for the exception to apply. Id. In Sunshine Biscuits, the Appellate

Division held that the plaintiff failed to sustain the *prima facie* burden for disclosure of a

memorandum prepared by in-house counsel laying out an approach to be taken in resolving a

contract dispute (without suggesting the development of false information or facts), merely

because defense counsel asserted an affirmative defense arguably inconsistent with the legal

position embodied in the memorandum. Id. at 618-619. Even in the case relied upon by USA

Container (involving an alleged bad faith denial of insurance coverage), the Supreme Court of

Alaska stated that there must be "*prima facie* evidence of fraud as opposed to a mere allegation

of fraud ... where a party is seeking to discover all the attorney-client communications relating

to the defense of an insurance claim by an insurer." Werley, 526 P.2d at 32.

Quite frankly, USA Container's assertions in this regard are simply devoid of any merit. There is no evidence of any fraud, deception or other deceit. It suggests that if the "*in camera* inspection reveal[s] that the documents Travelers has withheld contain evidence of bad faith, improper denial of coverage, or withholding coverage where it was due and owing, these documents should be produced despite any assertions of privilege." Reply at 19. However, USA Container cannot properly use the Special Master's review of the withheld documents to bootstrap its claimed applicability of the crime/fraud exception into a basis for production. See Sunshine Biscuits, 301 N.J. Super. at 618 (the *prima facie* showing by the party seeking to apply the "crime fraud" exception "must be made by evidence other than the contested communication itself")(emphasis supplied)(citation omitted). However, without commenting on, or addressing the merits of, the coverage dispute (that is, whether the coverage denial was proper or improper), based upon my *in camera* review, I am satisfied that there is not even the slightest suggestion of fraud, false information or deceit in the attorney-client communications so as to support the crime/fraud exception.

## 2. *Work-Product Doctrine.*

The federal work-product doctrine set forth in Fed. R. Civ. P. 26(b)(3)(A) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent), But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i)  they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii)  the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

"If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The party asserting work product protection bears the burden to show that the doctrine applies. Sealed Air, 253 F.R.D. at 306.

The work-product doctrine requires that the materials in dispute be prepared or obtained: (1) in reasonable anticipation of litigation; and (2) primarily for the purpose of litigation. Id. at 306-7; In re Gabapentin Patent Litig., 214 F.R.D. 178, 183 (D.N.J. 2003).

The "reasonable anticipation test" requires that the court determine "whether litigation could reasonably have been anticipated." Sealed Air, 253 F.R.D. at 306; In re Gabapentin, 214 F.R.D. at 183. "A party must show more than a 'remote prospect' and 'inchoate possibility' or a 'likely chance of litigation.'" In re Gabapentin, 214 F.R.D. at 183 (citation omitted). Although the litigation need not be imminent, "there must be an identifiable specific claim of impending litigation when the materials were prepared." In re Gabapentin, 214 F.R.D. at 183; Sealed Air, 253 F.R.D at 306.

The "purpose of litigation" prong requires that the specific facts and circumstances of a given case establish that the document was prepared or obtained because of the prospect of litigation and not for business or other reasons. Sealed Air, 253 F.R.D. at 307; In re Gabapentin, 214 F.R.D. at 184. "Documents created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are routinely prepared in the ordinary course of business are outside the scope of work product protection." In re Gabapentin, 214 F.R.D. at 184. "Even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work product privilege still depends primarily on the reason or purpose for the documents' production." Id.

- 53 -

Travelers asserts that the "work product in anticipation of litigation" doctrine applies to three documents (1) TRA 1039-1042, emails dated 9/3/08, 9/5/08 & 9/8/08, (2) TRA 1047-1049, the Liability Property Damage Worksheet dated 9/28/08 and (3) the redacted portion of the Berardinelli email (TRA 1029-1031). For the Liability Property Damage Worksheet and the Berardinelli email, Travelers also asserted the attorney-client privilege.

USA Container challenges the claim of work product protection for the September 2008 email exchange and the Liability Property Damage Worksheet. USA Container does not claim any substantial need for these documents, so that the only question is whether or not the documents fall within the scope of attorney work product.

At oral argument, USA Container confirmed that the challenge to the Berardinelli email is also based upon "waiver" of the work-product protection because of Simpson's disclosure of the Travelers' coverage opinion and advice to Chubb. Tr. (10/3/12) at 23:18-24. As set forth above, New Jersey courts apply the common interest doctrine to attorney work-product, and therefore, for the same reasons explained previously with regard to the attorney-client privilege, the disclosure to Chubb did not cause a waiver of the work-product protection.

Based upon my *in camera* review the work-product protection does not apply to TRA 1039-1042 (September 2008 emails). Except for the one paragraph on page 2 that reflects advice of counsel, neither the attorney-client privilege nor the work-product doctrine applies to TRA 1047-1049 (Liability Property Damage Worksheet). Finally, I conclude that the redacted portion of the Berardinelli email is privileged. My analysis as to all of these documents has been detailed in Appendix A.

- 54 -

## VIII. Conclusion.

The Order Appointing Special Master directs that the compensation of the Special Master and any attorney working for the Special Master be split evenly between the parties, Order at ¶4, but empowers the Special Master to shift all or part of the expenses to one party or the other to the extent that Travelers or USA Container acted in bad faith regarding the privilege issues. I am satisfied that fee shifting is not warranted and would therefore recommend that the fees of the Special Master and the assistant to the Special Master be shared equally by each party.

Pursuant to Fed. R. Civ. P. 53(f)(2), either party may file objections to -- or a motion to adopt or modify -- these Recommendations within twenty-one (21) days unless extended or shortened by the Court.

So recommended,

By: _____

Hon. Douglas K. Wolfson, J.S.C. (Ret.)
Special Master
Schwartz Simon Edelstein & Celso LLC
100 South Jefferson Road, Suite 200
Whippany, New Jersey 07981
(973) 301-0001
dwolfson@sseclaw.com

Dated: October 25, 2012

-55-

## Appendix A
## Special Master's Analysis

*Travelers' Privilege Log (Withheld Documents)*

| Row # | Bates # | Description and Rationale for Ruling |
|---|---|---|
| 1 | TRA 1033-1035 | Form titled "Recommended DJ Actions." Author and recipients not identified on the document. The original privilege log lists the author as "Travelers" and the recipient as "Schenck, Price, Smith & King LLP" with the subject as "Litigation Referral." By email dated October 11, 2012 to the Special Master, Travelers' counsel represented that TRA 1033-35 was prepared by Dean Lospinoso (Traveler's in-house counsel) and sent to his supervisor William Hurley or Linda Botek at Travelers, both of whom are attorneys. The document includes coverage analysis and litigation strategy and appears to have been created for the purposes of memorializing legal advice and strategy. Based upon counsel's representation as to the author and recipients, attorney-client privilege attaches. The work-product doctrine was not asserted on the original privilege log. The revised privilege log (attached to the letter dated 10/19/12 from Travelers' counsel to USA Container's counsel) claims both work product and attorney-client privilege. Because the document is protected by the attorney-client privilege, it is not necessary to address whether the work-product doctrine also applies. |
| 2 | TRA 1036 | Titled: "Claim Legal Coverage Opinion Referral Form." There is no author or recipient on the document. The privilege log lists the author as M. Simpson and recipient as Schenck, Price, Smith & King, LLP. Based upon the contents, the document appears to have been prepared by Michele Simpson of Travelers. The "Date of Referral" is 9/3/08 and the contents include a description of coverage issues. By email dated October 11, 2012 to the Special Master, Travelers' counsel represented that TRA 1036 was prepared by Michele Simpson (claim representative at Travelers) and submitted to Dean Lospinoso (Traveler's in-house counsel) for his coverage opinion. |

| | | |
|---|---|---|
| | | The communication made for purpose of requesting legal advice. Attorney-client privilege applies.<br><br>The work-product doctrine was not asserted on the original privilege log. The revised privilege log (attached to the letter dated 10/19/12 from Travelers' counsel to USA Container's counsel) claims both work product and attorney-client privilege. Because the document is protected by the attorney-client privilege, it is not necessary to address whether the work-product doctrine also applies. |
| 3 | TRA 1037-1038 | Email chain containing 3 emails. The first email starting the chain is dated 9/3/08 from M. Simpson of Travelers to M. Roark of Travelers seeking information requested by coverage counsel. The second email is dated 9/5/08 from M. Roark to M. Simpson forwarding the document requested by M. Simpson. The third email is dated 9/5/08 from M. Simpson to Dean R. Lospinoso, forwarding the attachment from M. Roark and providing additional information to respond to counsel's request.<br><br>On the privilege log for this document, Travelers logged the third (the top) email with a claim of attorney-client privilege. The other two emails are also part of TRA 1039-1042, are identified on the privilege log under TRA 1039-1042 and are addressed in Row # 4 below.<br><br>With regard to the email dated 9/5/08 from M. Simpson to Dean R. Lospinoso, the communication was made at the request of counsel for the purposes of his providing legal advice. Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted.<br><br>The attachment to the email was not identified on the privilege log or included in the set of documents produced for review *in camera*. If the attachment is responsive to any discovery request (and unless there is a valid basis for withholding it), the attachment should be produced. |

| 4 | TRA 1039-1042<br><br>TRA 1039-1040 contains only the first three emails.<br><br>TRA 1041-1042 contains all four emails. | Email chain containing four emails between M. Simpson and M. Roark at Travelers. The first email starting the chain is dated 9/3/08 from M. Simpson of Travelers to M. Roark of Travelers seeking information requested by coverage counsel. The second email is dated 9/5/08 from M. Roark to M. Simpson forwarding the document requested by M. Simpson. The third email is dated 9/5/08 from M. Simpson to M. Roark with a follow-up inquiry. The fourth email is dated 9/8/08 from M. Roark to M. Simpson responding to follow-up inquiry. The privilege log incorrectly identifies the date as "9/5/08-8/8/08 exchange".<br><br>Work product in anticipation of litigation asserted. This is an email exchange between two Travelers' claims representatives in September 2008 involving the claim investigation. Even though the request for information may have been initiated by in-house coverage counsel, there is no showing the emails were created because of actual or anticipation of litigation at that time. Work product protection does not attach.<br><br>Attorney-client privilege not asserted.<br><br>The document being forwarded by M. Roark to M. Simpson with his 9/5/08 email was not attached to the email. If it is responsive to any discovery request (and unless there is a valid basis for withholding it), the attachment should be produced. |
| --- | --- | --- |
| 5 | TRA 1043-1046 | Email dated 9/10/08 from Dean R. Lospinoso, Esq. (Claim Center General Counselor at Travelers Claim Legal Group) to M. Simpson cc: William P. Hurley, Christine Sheridan Celia, and Deirdre D. Dobbins. This is an email from in-house counsel providing legal advice with coverage analysis and opinion.<br><br>By email dated October 11, 2012 to the Special Master, Travelers' counsel advised that William P. Hurley and Christine Celia are lawyers performing a role similar to Dean Lospinoso. Deidre Dobbins is a paralegal. All were and still are Travelers in-house employees.<br><br>Communication made for purposes of providing legal advice. Attorney-client privilege attaches. Privilege was not waived by disclosure to Travelers' in-house attorneys and paralegal.<br><br>Work-product doctrine not asserted. |

| 6 | TRA 1047-1049 | Liability Property Damage Worksheet dated 8/29/08.  Author: M. Simpson.  No recipient identified on the document; privilege log states: "Unaddressed."  One paragraph on the second page of the Worksheet reflects communications with coverage counsel.<br><br>Work product in anticipation of litigation and attorney-client privilege asserted.<br><br>No showing that this Worksheet was created in anticipation of litigation or "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Worksheet appears to reflect claim investigation.  No showing that the Worksheet was made to provide or request legal advice.  The portion of the paragraph on the second page of the Worksheet that reflects advice from coverage counsel may be redacted.  Otherwise, attorney-client privilege does not attach. |
| 7 | TRA 1050 -1054 | Email chain.  The first email is the same email as in TRA 1043-1046 and is privileged for the same reasons.<br><br>The second email is dated 12/3/08 from Dean R. Lospinoso, Esq. to M. Simpson and providing additional legal advice and requesting additional information for legal advice.  Communication made to provide legal advice.  Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 8 | TRA 1055-1059 | Email chain:  The first two emails in the chain are the same as TRA 1050-1054 and are privileged for the same reasons.<br><br>The third email is dated 12/11/08 from M. Simpson to Dean R. Lospinoso, Esq. responding to counsel's request for information.  Communication made to provide/request legal advice.  Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |

| 9 | TRA 1060-1064 | Email chain. The first two emails are the same as TRA 1050-1054 and are privileged for the same reasons.<br><br>The third email is dated 1/14/09 from M. Simpson to Dean R. Lospinoso, Esq. providing information and requesting legal advice. Communication made to provide/request legal advice. Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
|---|---|---|
| 10 | TRA 1065-1066 | Email chain. The first email is dated 1/26/09 to M. Simpson from Samantha K. Large, Administrative Legal Secretary Brown Moskowitz & Kallen PC (USA Container's coverage counsel) attaching correspondence from Kenneth L. Moskowitz, Esq.. The second email is dated 1/26/09 from M. Simpson to Dean R. Lospinoso, Esq. forwarding Ms. Large's email with attachment for legal advice. The third email is the response dated 1/26/09 from Dean R. Lospinoso, Esq. to M. Simpson. The fourth email is dated 1/26/09 from M. Simpson to Dean R. Lospinoso, Esq.<br><br>The email from Ms. Large to Ms. Simpson and the attachment to that email should not be withheld as privileged.<br><br>The second, third and fourth emails between Mr. Lospinoso and M. Simpson are for legal advice regarding Mr. Moskowitz's 1/26/09 letter. They discuss anticipated litigation. Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 11 | TRA 1067 -1068 | Email chain: The first email is dated 1/27/09 from Dean Lospinoso, Esq. to counsel at Coughlin Duffy LLP cc: M. Simpson requesting legal advice. The second email is dated 1/27/09 from counsel at Coughlin Duffy LLP to Dean R. Lospinoso, Esq. cc: M. Simpson responding to request for legal advice. The third email is dated 1/27/09 from Dean R. Lospinoso, Esq. to M. Simpson requesting additional information for legal advice. The fourth email is dated 1/27/09 from M. Simpson to Dean R. Lospinoso, Esq. responding to counsel's request for information for legal advice.<br><br>These emails are for providing or obtaining legal advice. The attorney-client privilege attaches.<br><br>Work-product protection not asserted. |

| 11A | TRA 1069<br><br>This document is grouped with TRA 1067-1069 as one document on the privilege log | Email chain: (1) email dated 1/27/009 from Dean R. Lospinoso, Esq. to M. Simpson requesting information for conflict check for retention of counsel and (2) email dated 1/27/09 from M. Simpson to Dean R. Lospinoso, Esq. responding to request for information for conflict check.<br><br>Communications are not made for purpose of requesting or providing legal advice. No legal advice requested or provided. Attorney-client privilege does not attach.<br><br>Work-product protection not asserted. |
|---|---|---|
| 12 | TRA 1070 -1071 | Email dated 2/5/09 from counsel at Coughlin Duffy LLP to Dean R. Lospinoso, Esq. cc: M. Simpson and counsel at Coughlin Duffy LLP re: coverage analysis and opinion.<br><br>With regard to the email, it is for the purpose of providing legal advice and protected by the attorney-client privilege. Work-product protection is not asserted.<br><br>The document also contains handwritten notes, which are not identified on the privilege log.<br><br>By email on October 11, 2012 to the Special Master, Travelers' counsel represented that Michele Simpson identified the notes as hers and she says they were made during a conference call where Dean Lospinoso, Travelers' in-house lawyer, was on the call.<br><br>The letter dated October 19, 2012 from Travelers' counsel to USA Container's counsel states that Michele Simpson is the author of the handwritten notes. Travelers' counsel confirmed on October 23, 2012 that the handwritten notes were made during a conference call with Dean Lospinoso, Esq., Travelers in-house coverage counsel.<br><br>Based upon my *in camera* review of the handwritten notes, they reflect an attorney's legal advice/opinion and strategy. Attorney-client privilege attaches. |
| 13 | TRA 1072-1073 | Email chain: The first email is dated 2/5/09 from counsel at Coughlin Duffy (same email as TRA 1070). The second email is dated 2/24/09 from M. Simpson to Dean R. Lospinoso, Esq. seeking status of coverage opinion from outside counsel. The third email is dated 2/24/09 from Dean R. Lospinoso, Esq. to M. Simpson in response to request. |

| | | |
|---|---|---|
| | | The first email is the same as TRA 1070 and is privileged for the same reasons.<br><br>The second and third emails address the status of obtaining the coverage opinion and are not confidential communications for the purpose of providing or obtaining legal advice.   The attorney-client privilege does not attach.<br><br>Work-product protection not asserted. |
| 14 | TRA 1074 | Email dated 3/9/09 from Dean R. Lospinoso, Esq. to counsel at Coughlin Duffy LLP cc:  M. Simpson requesting report from counsel.<br><br>This email requests the status of obtaining the attorney's coverage opinion. The information in the email is ministerial. No showing that this email was intended to be confidential or that disclosure would reveal a confidential attorney-client communication or information about the legal opinion. Attorney-client privilege does not attach.<br><br>Work-product protection not asserted. |
| 15 | TRA 1075 to 1103 | Letter dated March 10, 2009 from Coughlin Duffy LLP to Dean R. Lospinoso, Esq., Claim Center General Counsel, Travelers and Michele M. Simpson, Travelers, containing coverage analysis and opinion.<br><br>This letter provides legal advice. The attorney-client privilege attaches.<br><br>Work-product protection not asserted. |
| 16 | TRA 1104 | Email message scheduling conference call to discuss coverage opinion from outside counsel with handwritten notes.   The author of handwritten notes is not identified on the document but is listed as M. Simpson on the privilege log.  The privilege log states that the notes are "Summarizing Conversation with Counsel on Coverage."<br><br>Handwritten Notes:  By email on October 11, 2012 Travelers' counsel advised that Michele Simpson identified the notes as hers and she says they were made during a conference call where Dean Lospinoso, Travelers' in-house counsel, was on the call. |

| | | |
|---|---|---|
| | | Based upon my *in camera* review of the handwritten notes, they reflect an attorney's legal opinion and strategy. Attorney-client privilege attaches to the handwritten notes on this document. |
| | | Typed portion.   The typed portion of TRA 1104 reflects the scheduling of a conference call on March 16, 2009 with "Required Attendees" Simpson Michele, M; Lospinoso, Dean R; Bianchi-Sinatra, Deborah; DeStefano, Susan E; Botek, Linda J. By separate emails on October 11, 2012, Travelers' counsel identified the last three individuals as follows:  Linda Botek was a claims manager (an attorney) at the time the claim came in, Sue DeStefano was also a claims person and Deborah Bianchi-Sinatra is a claims supervisor in-house. |
| | | At oral argument, Travelers' counsel stated that its claim of privilege for the typed portion of the TRA 1104 only is for the portion of the document that sets forth the topic of the conversation with coverage counsel.   Tr. (10/3/12) at 61:14 to 62:6. |
| | | The topic of the conference call neither contains the attorney's legal opinion nor does it say that it is for the purpose of legal advice, however, the in-house counsel was a required attendee on the conference call and disclosure of the topic itself could reveal information about the legal opinion.   Attorney-client privilege attaches to the typed portion of the document that addresses the topic of the conference call. |
| | | Work-product protection is not asserted. |
| | | TRA 1104 should be produced with the topic of the conference call and the handwritten notes redacted. |
| 17 | TRA 1105 | Email chain:  The first email is dated 3/17/09 from M. Simpson to Dean R. Lospinoso, Esq. providing results of follow up with Chubb, the excess/umbrella carrier, and agent and requesting legal advice.  The second email is dated 3/17/09 from Dean R. Lospinoso, Esq. to M. Simpson responding to request for legal advice. |
| | | These emails are for the purpose of requesting and providing legal advice.  The attorney-client privilege attaches. |
| | | Work-product protection is not asserted. |

| 18 | TRA 1106-1107 | Email chain: The first email is dated 3/17/09 from M. Simpson to D. Lospinoso (same as TRA 1105 above). The second email is dated 3/17/09 from Dean R. Lospinoso, Esq. to M. Simpson requesting materials for coverage counsel. The third email is dated 3/18/09 from M. Simpson to Dean R. Lospinoso, Esq. re: communications with M. Roark at Travelers for information requested by counsel for legal advice.

These emails are for the purpose of requesting and providing legal advice. The attorney-client privilege attaches.

Work-product protection is not asserted. |

*Travelers' Privilege Log (Redacted Documents)*

| 19 | TRA 1029, 1031 | Email dated 3/18/09 from M. Simpson at Traveler to P. Berardinelli at Chubb. The redaction log states that "the last sentence of the first paragraph summarizes Travelers' counsel's position on coverage and Ms. Simpson advises P. Berardinelli of her counsel's position and basis for same." Travelers claims attorney-client privilege and work product in anticipation of litigation.

The redacted portion of the email contains the opinion of Travelers' counsel with regard to coverage and the basis for that opinion. The attorney-client privilege attaches.

Travelers' counsel advised at oral argument that the Berardinelli email was sent after Travelers notified USA Container that Travelers was going to file this coverage action and the email was sent in anticipation of litigation. Tr. (10/3/12) at 52:6-15. Based upon my *in camera* review, the coverage opinion that is the subject of the email was obtained in anticipation of the coverage litigation and because of that litigation. Work- product protection attaches.

As set forth in the Recommendation above, the common interest doctrine applies. Under New Jersey law, the attorney-client privilege and/or work product protection were not waived by transmittal of the coverage advice to Chubb. |