# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>USA CONTAINER CO., INC.<br><br>Defendant. | Civil Action No. 09-1612 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

This matter comes before the Court by way of two motions: (1) Plaintiff / Counterclaim Defendant The Travelers Property Casualty Company of America (hereinafter "Travelers")'s motion for summary judgment and (2) Defendant / Counterclaim Plaintiff USA Container Co., Inc. (hereinafter "USA Container")'s motion for partial summary judgment. The Court has considered the submissions made in support of and in opposition to the parties' respective motions, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Travelers' motion is denied and USA Container's motion is granted.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

This action arises from an insurance coverage dispute between USA Container and its insurer, Travelers. At issue in this case is whether USA Container is entitled to coverage for damages it paid to non-party Meelunie B.V./Amsterdam ("Meelunie") as a result of a settlement reached between these entities in another litigation involving claims for breach of contract and negligence.

## A. The Underlying Dispute between USA Container and Meelunie

In or about 2006, USA Container—a company engaged in the business of supplying industrial containers, logistical services, and warehousing—first contracted with Meelunie, a distributor of corn syrup, to arrange for the transfer of corn syrup from rail cars to drums. (CM/ECF No. 87-1 at ¶ 6; CM/ECF No. 83-3 at ¶ 2.) Once transferred to the drums, the corn syrup was to be shipped to Meelunie's customers in Kuwait, Nigeria, and Iran. (*Id.*)

To appropriately transfer the corn syrup from the rail cars to the drums, the corn syrup had to be heated in accordance with certain standard operating procedures ("SOPs"). (CM/ECF No. 83-3 at ¶ 3; CM/ECF No. 87-1 at ¶ 6.) These SOPs were developed by the supplier of Meelunie's corn syrup, Archer Daniels Midland ("ADM"). (CM/ECF No. 87-1 at ¶ 6.) Because

---

[1] Pursuant to Local Civil Rule 56.1, a party filing a motion for summary judgment "shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." The opponent must "furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute <u>and citing to the affidavits and other documents submitted in connection with the motion.</u>" Loc. Civ. R. 56.1 (emphasis added). In its responsive 56.1 Statement, Traveler's failed specifically to admit or deny the statements set forth in Paragraphs 4, 7, 8, 9, 10, 12, 13, 14, 16, 17, 23, 24, 26, 27, 31, 32, and 34 of USA Container's Rule 56.1 Statement, as required under Rule 56.1. Accordingly, the Court deems undisputed each statement in USA Container's Rule 56.1 Statement that Travelers failed to admit or deny. *See, e.g., Schwartz v. Hilton Hotels Corp.*, 639 F. Supp. 2d 467, 469 n.2 (D.N.J. 2009) ("The Court deems undisputed each statement that [party opposing summary judgment] neither admitted nor denied in her responsive statement."); *see also Owens v. Am. Hardware Mut. Ins. Co.*, No. 11-6663, 2012 U.S. Dist. LEXIS 182953 (D.N.J. Dec. 31, 2012) ("The proper response to a procedurally correct Rule 56 motion is to file a counter statement that denies the fact is material, admits the material fact, or denies the material fact by counter proofs conforming to the rules of evidence.").

USA Container did not have the resources "to heat, drum and ship Meelunie's corn syrup" in accordance with ADM's SOPs, USA Container "subcontracted with Passaic River Terminal, LLC ("Passaic River") to perform the entirety of all of the work necessary" to transfer the corn syrup to the drums for transport. (*Id.* ¶ 7.)

According to Travelers, Meelunie directed USA Container to advise Passaic River how to appropriately handle the corn syrup. (CM/ECF No. 83-3 at ¶ 4.) USA Container, on the other hand, denies this fact, and claims that "Passaic River dealt directly with ADM with respect to the SOPs to be utilized for the transferring of the corn syrup." (CM/ECF No. 88-1 at ¶ 4.) According to USA Container, it had "no involvement in directing, overseeing, supervising, inspecting or specifying the means and/or methods to be utilized in Passaic River's heating and drumming operations." (CM/ECF No. 87-1 at ¶ 12.) Instead, "Meelunie arranged for the bulk corn syrup it purchased from ADM to be delivered by ADM in rail cars directly to Passaic River at its Newark, New Jersey facility where all of the work necessary for heating, processing and shipping the product overseas was performed exclusively by Passaic River." (CM/ECF No. 84-1 at ¶ 8.) "Passaic River dealt directly with ADM with respect to the . . . SOPs to be utilized for heating, drumming and transferring the corn syrup." (*Id.* at ¶ 9.)

In or about November 2007, Passaic River damaged Meelunie's corn syrup by overheating it. (*See* CM/ECF No. 87-1 at ¶ 11.) The damage to the corn syrup was not discovered until after it was shipped overseas and rejected by Meelunie's customers. (CM/ECF No. 83-3 at ¶ 9; CM/ECF No. 87-1 at ¶ 13.) As a result of the damaged corn syrup, Meelunie incurred approximately $700,000 in damages, inclusive of customs costs, storage fees and other expenses. (CM/ECF No. 83-3 ¶ 12; CM/ECF No. 87-1 at ¶ 14.) Meelunie subsequently demanded that USA Container compensate it for its losses. (CM/ECF No. 87-1 at ¶ 13.) On or

about October 29, 2008, Meelunie filed a complaint (the "Meelunie Complaint") in this district alleging one count for breach of contract against USA Container, and one count for negligence against both USA Container and Passaic River. (CM/ECF No. 83-3 at ¶ 11.) In May 2009, Meelunie settled its claims against USA Container for $425,000 plus half of any recovery that USA Container obtains in this action against Travelers. (CM/ECF No. 87-1 at ¶ 34; CM/ECF No. 83-3 at ¶ 14.)

B. The Insurance Policy Agreement Between Travelers and USA Container

In or about June 2007, USA obtained a Commercial General Liability insurance policy (the "CGL Policy") from Travelers. Under the terms of the CGL Policy, Travelers is required to

> pay those sums that the insured [i.e., USA Container] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . [and] defend the insured against any "suit" seeking those damages.

(CM/ECF No. 84-3 at 11.)

The CGL Policy covers "bodily injury" or "property damage" that is "caused by an 'occurrence.'" (*Id.*) "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . [that is] deemed to occur at the time of the physical injury that caused it" or "[l]oss of use of tangible property that is not physically injured . . . [that is] deemed to occur at the time of the 'occurrence' that caused it." (*Id.* at 25.) "Occurrence "is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 24.)

The CGL Policy contains several exclusions to coverage, four of which are relevant in this case: (1) Exclusion j(4), which precludes coverage for damage to "[p]ersonal property in the care, custody or control of the insured;" (2) Exclusion j(6), which precludes coverage for property damage to "that particular part of any property that must be restored, repaired or

4

replaced because 'your [i.e., USA Container's] work' was incorrectly performed on it;" (3) Exclusion l which precludes coverage for "'[p]roperty damage' to 'your [i.e., USA Container's] work arising out of it or any part of it;" and (4) Exclusion n, which in pertinent part precludes coverage for damage to "product, work, or property [that] is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." (CM/ECF No. 84-3 at 14-15.) Exclusion j(6) does not apply to property damage included within the Policy's definition of the "products-completed operations hazard." (CM/ECF No. 84-3 at 15.) Additionally, Exclusion l "does not apply if the damaged work or the work out of which the damage arises was performed on [USA Container's] behalf by a subcontractor." (*Id.* at 25.)

In relevant part, the Policy defines "your work" and "products-completed operations hazard," respectively, as follows:

> "'Your Work' means [w]ork or operations performed by you [i.e., USA Container] or on your [i.e., USA Container's] behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." (*Id.* at 25.)

> "Products-completed operations hazard includes all 'bodily injury' and 'property damage' occurring away from premises you [i.e., USA Container] own or rent and arising out of . . . 'your work' except: (1) Products that are still in your [i.e., USA Container's] physical possession; or (2) Work that has not yet been completed or abandoned." (*Id.* at 24-25.)

C. <u>USA Container's Insurance Claim</u>

In or about August 2008, USA Container timely notified Travelers of Meelunie's demand for damages, and made a claim for coverage under the CGL Policy. (*See* CM/ECF No. 87-1 at ¶ 15.) USA Container also timely notified Travelers of the Meelunie Complaint, and sought a defense and indemnity pursuant to the CGL Policy. (*Id.* at ¶¶ 19, 21.)

5

In August 2008, Travelers began investigating whether it was required to provide coverage to USA Container pursuant to the Policy. (CM/ECF No. 84-3 at 100.) Travelers' Senior Claim Specialist, Michele M. Simpson ("Simpson" or "Senior Claims Specialist"), "initially believed that there was an 'occurrence' or multiple 'occurrences' within the meaning of the CGL Policy." (CM/ECF No. 84-1 at ¶ 33.) Nevertheless, Travelers ultimately denied USA Container's request for coverage on December 19, 2008. (CM/ECF No. 83-3 at ¶ 15; CM/ECF No. 87-1 at ¶ 22.)

On that date, Simpson sent a letter (the "denial letter") to USA Container's counsel on behalf of Travelers asserting the following reasons for denying coverage: "(1) the [Meelunie] Complaint does not allege 'bodily injury' as defined in the Travelers Policy; (2) there is no 'property damage' to the extent that the Meelunie Complaint 'fails to alleged [sic] physical injury to or loss of use of tangible property other than to the work performed by or on behalf of the named insured;' (3) claims based upon breach of contract and faulty workmanship are not deemed an 'occurrence' under the Travelers Policy; and (4) policy exclusions (j)(4) and (j)(6) in the Travelers Policy preclude coverage." (CM/ECF No. 83-3 at ¶ 15; *see also* CM/ECF No. 83-2 at 33.) Simpson consulted with Travelers' coverage counsel prior to signing the denial letter. (CM/ECF No. 87-1 at ¶ 28.)

In a letter dated January 26, 2009, USA Container requested that Travelers reconsider its denial of coverage. (CM/ECF No. 24 at ¶ 24.) Travelers denied USA Container's request for reconsideration. Subsequently, on April 6, 2009, Travelers filed a complaint with this Court seeking, among other things, (1) a declaration that the Policy "does not provide coverage for the allegations in the Meelunie Complaint," and (2) a declaration "that Travelers has no obligations to USA Container in connection with the Meelunie Complaint." (CM/ECF No. 1 at 3.) On June

9, 2009, USA Container filed a counterclaim against Travelers asserting a claim for breach of contract and another for bad faith. (CM/ECF No. 3 at 8-9.)

On April 26, 2013, Travelers moved for summary judgment as to both its affirmative claims and USA Container's counterclaim; on this date USA Container also moved for partial summary judgment as to its breach of contract claim. Specifically, USA Container seeks a ruling that the Policy "provides USA Container coverage for the claims of Meelunie . . . arising from sub-contractor Passaic River's damage to Meelunie's corn syrup, and that Travelers breached its duty to defend and indemnify USA Container." (CM/ECF No. 84-2 at 40.)

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must first demonstrate that there is no genuine issue of material fact in dispute, such that a grant of summary judgment would be appropriate. *See Celotex v. Catrett*, 477 U.S. 317, 325 (1986). To do so, "the moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young*, 494 F.3d 418, 424 (3d Cir. 2007). If the moving party satisfies this burden, the burden shifts to the non-moving party to point to sufficient evidence that creates genuine issues of disputed material fact "such that a reasonable jury could find in its favor." *Id.*; *see also Celotex*, 477 U.S. at 332. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh v. Butler County Family*

*YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). In deciding whether there are any genuine issues of disputed material fact, courts must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (citation omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).

### III. DISCUSSION

Deciding the merits of each party's respective motion requires this Court to answer two questions—(1) was USA Container's claim within the basic coverage terms of the Policy? and (2) if so, do any of the Policy's exclusions apply to bar coverage? Thus, the questions the parties' respective motions raise are ones of contract interpretation.

Before turning to these questions, a recitation of well established principles that apply to the interpretation of insurance contracts is in order. Under New Jersey law, "the interpretation of insurance contracts requires generous readings of coverage provisions, narrow readings of exclusionary provisions, resolution of ambiguities in favor of the insured, and construction consistent with the insured's reasonable expectations." *Cobra Products, Inc. v. Federal Ins. Co.*, 317 N.J. Super. 392, 400 (App. Div. 1998).[2] The insured bears the initial burden of establishing that the claim is "within the basic terms of the policy." *S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co.*, 388 N.J. Super. 592, 603 (App. Div. 2006) (citation omitted). The insurer then bears the burden of proving the applicability of a provision excluding coverage. *See, e.g., Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997) ("In general, insurance policy exclusions must be

---

[2] Neither side disputes that New Jersey law governs the instant dispute. (*See, e.g.,* CM/ECF Nos. 87 at 6; 84-2 at 12.) Accordingly, this Court applies New Jersey law in deciding the pending motions for summary judgment. *See, e.g., Lebergen v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006) (noting that "[t]here is a presumption that the law of the situs state applies" when a federal court exercises diversity jurisdiction).

8

narrowly construed; the burden is on the insurer to bring the case within the exclusion."). "When considering an exclusion of coverage, any ambiguity 'must be strictly construed against the insurer so that reasonably anticipated coverage is provided.'" *Am. Wrecking Corp. v. Burlington Ins. Co.*, 400 N.J. Super. 276, 282-83 (App. Div. 2008). However, "exclusions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." *Chunmuang*, 151 N.J. at 95 (citation omitted).

With this framework in mind, the Court will now address the questions raised in the parties' motions.

### A. Whether USA Container's Claim Falls within the Basic Coverage Terms of the Policy

As a threshold matter, USA Container must demonstrate that its claim is (1) for "property damage" that is (2) "caused by an occurrence" to establish that its claim falls within the Policy's basic coverage terms.

#### a. Property Damage[3]

There is no dispute that USA Container's liability to Meelunie arises from the fact that its subcontractor, Passaic River, damaged Meelunie's corn syrup, (*see* CM/ECF No. 87-1 at ¶ 11), and that the damaged corn syrup "was not discovered . . . until it was shipped overseas and rejected by Meelunie's customers,"(*id.* at ¶ 13.). As it is clear that USA Container became liable for damage to Meelunie's "tangible property"(i.e., corn syrup) and for the "loss of use" of said property, this Court concludes that USA Container's claim is one for "property damage" as that term is defined in the Policy. (*See* CM/ECF No. 84-3 at 25.)

#### b. Occurrence

---

[3] Travelers relies on exclusions in the CGL Policy to argue that USA Container has failed to establish that it is liable for property damage. Travelers does not, however, dispute that the damage to Meelunie's corn syrup satisfies the CGL Policy's basic definition of property damage. The merits of Traveler's reliance on the CGL Policy's exclusions are discussed *infra*.

9

Coverage under the Policy is triggered by an "occurrence," which the Policy defines, in relevant part, as an "accident." (CM/ECF No. 84-3 at 24.) The New Jersey Supreme Court has held that "the accidental nature of an 'occurrence' is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, the resulting injury is 'accidental,' even if the act that caused the injury was intentional." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 183 (1992). Thus, to determine whether USA Container's claim is for a covered "occurrence," the Court must decide whether USA Container intended or expected to cause the damage to, and loss of use of, Meelunie's corn syrup. *See, e.g., id.*

The record in this case is devoid of any evidence suggesting that either USA Container or Passaic River intended or expected that Meelunie would lose the use of its corn syrup, or that said corn syrup would be damaged.[4] To the contrary, Traveler's Senior Claims Specialist confirmed that Traveler's "initial impression [was] that there is an occurrence, or multiple occurrences, as defined under the Policy." (*See* CM/ECF No. 84-1 at ¶ 33.)

Notwithstanding the initial impression of Travelers' Senior Claims Specialist, Travelers now argues that there has been no "occurrence" within the meaning of the CGL Policy for two reasons: (1) its liability to Meelunie arose from "faulty workmanship" to USA Container's own work product and (2) "[t]he Policy provided USA Container with coverage for tort liability for physical damage to others and not for contractual liability resulting from faulty workmanship." (*See, e.g.,* CM/ECF No. 83-1 at 13.) The Court will now address each of these arguments, in

---

[4] In its brief in opposition to USA Container's motion for partial summary judgment, Travelers argues that there was no occurrence because, among other things, "USA Container knew that if its subcontractor failed to follow the [standard operating procedures for heating Meelunie's corn syrup], the corn syrup could be damaged resulting in a breach of its contract." (CM/ECF No. 87 at 11.) This argument is premised on a misapplication of the standard for determining an "occurrence." The relevant inquiry is not whether USA Container knew, could have or should have known that a failure to follow the SOPs would result in damage to the corn syrup, but whether USA Container *actually* expected or intended the damage. *See, e.g., Voorhees*, 128 N.J. at 185 ("Absent exceptional circumstances that objectively establish the insured's intent to injure, we will look to the insured's *subjective intent* to determine intent to injure.") (emphasis added).

10

turn.

1. "Faulty Workmanship" as an "Occurrence"

To support its proposition that USA Container's claim for "faulty workmanship" cannot amount to an occurrence, Travelers relies extensively on *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 249 (1979). *Weedo* involved a masonry contractor who was sued for breach of contract arising out of its faulty workmanship. *Weedo*, 81 N.J. at 235. The masonry contractor sought a defense and indemnification from its insurer under the terms of a CGL policy containing the standard provisions adopted in 1973.[5] *Id.* at 236-37. The court held that the masonry contractor was not entitled to coverage based on the applicability of exclusions in the policy. *Id.* at 241. In so doing, the court observed that "the policy in question does not cover an accident of faulty workmanship, but rather faulty workmanship which causes an accident." *Id.* at 249. Notably, however, the court did not address whether there was an "occurrence" under the policy because the insurer "conceded at oral argument . . . that but for the exclusions in the policy, coverage would obtain." *Id.* at n.2. Thus, *Weedo* does not provide specific guidance on the extent to which liability arising from faulty workmanship may amount to an occurrence under a CGL policy.[6]

---

[5] Prior to 1986, "[t]he standard provisions of the CGL [had] undergone four principal revisions -- in 1943, 1955, 1966 and 1973 -- since their initial promulgation in 1940." *See Weedo*, 81 N.J. at 237 n.1. In 1986, the current version of the CGL was further revised by the Insurance Services Office on behalf of the insurance industry. *See, e.g., Hartford Ins. Co. v. California*, 509 U.S. 764 (1993) (describing how CGL forms are produced by the insurance industry). The CGL Policy at issue in this case contains the 1986 revisions which include the subcontractor exception to Exclusion l. Throughout its submissions, USA Container argues that this Court should read the subcontractor exception to Exclusion l in the CGL Policy as affirmatively providing coverage in this case. The Court declines to adopt such a broad reading of the subcontractor exception, which applies *only* to limit the scope of Exclusion l, not as an affirmative grant of coverage. *See, e.g., Weedo*, 81 N.J. at 248 ("[e]ach exclusion is meant to be read with the insuring agreement, *independently of every other exclusion*. The exclusions should be read seriatim, not cumulatively.") (citation omitted) (emphasis added).

[6] Many of the other cases upon which Travelers relies for the proposition that there is no occurrence in this case do not address the circumstances under which damage resulting from faulty workmanship may constitute an occurrence under New Jersey law. *See, e.g., Grand Cove II Condominium Ass'n, Inc. v. Ginsberg*, 291 N.J. Super. 58 (App. Div. 1996) (containing no analysis on what constitutes an "occurrence" under a CGL policy); *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591 (3d Cir. 2009) (holding that faulty workmanship does not amount to an "occurrence" under *Pennsylvania* law) (emphasis added); *Wausau Underwriters Ins. Co. v. State Auto Mut. Ins. Co.*, 557 F. Supp. 2d 502 (D.N.J. 2008) (applying *Pennsylvania* law) (emphasis added); *Kvaerner Metals Div. of*

11

Although *Weedo* did not, itself, address what constitutes an "occurrence" under a CGL policy, New Jersey courts have cited *Weedo* for the proposition that faulty workmanship causing damage to the insured's *own* work is not an "occurrence." *See, e.g., Firemen's Ins. Co. of Newark v. Nat'l Union Fire Ins. Co.*, 387 N.J. Super. 434 (App. Div. 2006) (applying *Weedo*, the court noted in *dicta* that under the 1973 version of a CGL policy, faulty workmanship--whether performed by a general contractor or a subcontractor--is not an occurrence when the faulty workmanship causes damage to the general contractor's own work); *Atlantic Mutual Ins. Co. v. Hillside Bottling Co., Inc.*, 387 N.J. Super. 224, 233 (App. Div. 2006) (holding that faulty workmanship of the insured causing damage to insured's own work product did not fall within basic coverage terms of CGL policy); *see also Pa. Nat'l Mut. Cas. Ins. Co. v. Parkshore Dev. Corp.*, 2009 U.S. Dist. LEXIS 50738, at *6 (D.N.J. June 17, 2009) (applying New Jersey law in holding that faulty construction that damaged insured's own work did not amount to an occurrence). Conversely, New Jersey courts have concluded that a coverage-triggering "occurrence" exists when the faulty workmanship of an insured causes damage to a third-party's property. *See, e.g., S.N. Golden Estates, Inc. v. Continental Cas. Co.*, 293 N.J. Super. 395 (App. Div. 1996) (holding that an insured's faulty construction of septic systems that caused damage to neighboring homes constituted an "occurrence"); *Newark Ins. Co. v. Acupac Packaging, Inc.*, 328 N.J. Super. 385 (App. Div. 2000) (holding that where underlying complaint asserted damages to third party's property, insured's claim for damages fell within the scope of an "occurrence"); *accord Weedo*, 81 N.J. 233, 240-41 ("Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the

---

*Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317 (2006) (applying *Pennsylvania* law) (emphasis added).

CGL.") (cited in *S.N. Golden Estates*, 293 N.J. Super at 401).

In its brief in opposition to USA Container's motion for partial summary judgment, Travelers acknowledges that it is "unquestionably true" that "faulty workmanship may constitute an occurrence." (CM/ECF No. 87 at 14.) Travelers also acknowledges "that in order for there to be an occurrence, there must be damage to property other than an insured's work." (*Id.*) An application of the principles that Travelers, itself, acknowledges are applicable compels this Court to conclude that the faulty workmanship resulting in the damage to, and loss of use of, Meelunie's corn syrup is an "occurrence."

Indeed, USA Container neither owned, manufactured, nor supplied Meelunie's corn syrup. Put differently, Meelunie's corn syrup was not a product of USA Container's work. USA Container does not merely seek coverage for an "accident of faulty workmanship," but for its subcontractor's faulty workmanship resulting in damage to, and loss of use of, the property of a third party--that is, Meelunie's corn syrup. Accordingly, USA Container's insurance claim fits squarely within the scope of an "occurrence" under New Jersey law. *See, e.g., S.N. Golden Estates, Inc.*, 293 N.J. Super. 395; *Acupac Packaging, Inc.*, 328 N.J. Super. 385.

2. Whether Breach of Contract Liability Forecloses the Possibility of an "Occurrence"

Travelers' argument that there is no occurrence in this case because Passaic River's failure to follow the SOPs also resulted in USA Container's breaching its contract with Meelunie, (*see* CM/ECF Nos. 83-1 at 13; 87 at 15; 93 at 3-7), is unpersuasive for two reasons.

First, the theory upon which a plaintiff proceeds in an underlying litigation for which an insured seeks coverage is "irrelevant to a determination of whether there [is] a covered 'occurrence' under [a] CGL [policy]." *Aetna Cas. & Sur. Co. v. Ply Gem Industries, Inc.*, 343 N.J. Super. 430, 447 (App. Div. 2001) (citing *Weedo*, 81 N.J. at 240-41). Thus, the fact that the

13

Meelunie Complaint asserts a breach of contract claim against USA Container is irrelevant to determining whether there is a coverage-triggering "occurrence" in this case. *See id.*

Second, the Court is unaware of, and Travelers has not cited, any binding authority compelling the Court to conclude that faulty workmanship that causes damage to third party property is not an "occurrence" if the faulty workmanship also results in the insured being liable for breach of contract. Accordingly, just because USA Container may have been liable for breach of contract on account of Passaic River's faulty workmanship, it does not follow that said faulty workmanship causing damage to third party property (i.e., Meelunie's corn syrup) cannot constitute an occurrence. *See Travelers Indem. Co. v. Dammann & Co., Inc.*, No. 04-5699, 2008 WL 370914, at * (D.N.J. Feb. 11, 2008) (holding that there was "occurrence" under a CGL policy where faulty workmanship causing damage to third party's property gave rise to insured's liability for both contractual and tort damages).

As USA Container has established that it seeks coverage for "property damage" that was "caused by an occurrence," this Court holds that USA Container's claim falls within the basic coverage provisions of the CGL Policy.

### B. Whether any of the CGL Policy's Exclusions Apply

Having determined that USA Container has established that its claim falls within the CGL Policy's basic coverage provisions, the Court now turns to consider whether Travelers has met its burden of establishing that any of the exclusions in the CGL Policy apply.

In its brief in support of its motion for summary judgment, Travelers argues that Exclusion j(6) bars coverage. Additionally, in its brief in opposition to USA Container's motion for partial summary judgment, Travelers argues that Exclusions n and j(6) bar coverage.

#### 1. Applicability of Exclusion j(6)

As discussed *supra*, Exclusion j(6) bars coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because '[the insured's] work' was incorrectly performed on it." (CM/ECF No. 84-3 at 14-15.) Exclusion j(6), however, does not apply to damage included within the CGL Policy's definition of "products-completed operations hazard."[7]

In its submissions, Travelers has failed to cite any authority in support of its argument that Exclusion j(6) applies in this case. Additionally, Travelers has not offered any explanation as to why USA Container's claim is for damage to property "that must be restored, repaired or replaced."[8] Rather, in arguing that Exclusion j(6) applies, Travelers has merely attempted to persuade the Court that the damage to, and loss of use of, Meelunie's corn syrup do not fall within the CGL Policy's definition of the "products-completed operations hazard." (*See* CM/ECF Nos. 83-1 at 14-15; 87 at 16-17; 93 at 13-14.) Travelers' argument that Exclusion j(6) applies because an exception to said exclusion does not is unpersuasive. More importantly, Travelers' failure to demonstrate that the damage to, and loss of use of, the corn syrup fits within the basic terms of Exclusion j(6) is insufficient to satisfy Traveler's burden of proving the applicability of the exclusion.

In light of the narrow construction with which this Court is required to read Exclusion j(6) and Travelers' failure to satisfy its burden of proving the applicability of said exclusion, this Court holds that Exclusion j(6) does not bar coverage under the CGL Policy.

2. Applicability of Exclusion n

---

[7] As discussed above, the "products-completed operations hazard includes all 'bodily injury' and 'property damage' occurring away from premises you [i.e., USA Container] own or rent and arising out of . . . 'your work' except: (1) Products that are still in your [i.e., USA Container's] physical possession; or (2) Work that has not yet been completed or abandoned." (CM/ECF No. 84-3 at 14-15.)

[8] Neither the Meelunie Complaint nor any evidence in the record suggests that the damaged corn syrup was "restored, repaired, or replaced." To the contrary, the Meelunie Complaint states that Meelunie "sold all of the damaged product, at a reduced rate." (CM/ECF No. 83-2 at 5.)

15

As discussed *supra*, Exclusion n bars coverage for damage to "product, work, or property [that] is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." (CM/ECF No. 84-3 at 14-15.) Travelers did not invoke Exclusion n until responding to USA Container's brief in support of its motion for summary judgment.[9] It is procedurally improper for Travelers to invoke Exclusion n for the first time in a brief in response to a summary judgment motion. *See, e.g., Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 15 F. Supp. 2d 561, 566 (D.N.J. 1998) ("[C]ourts cannot allow insurers to hide the exclusions they plan to use until trial or summary judgment. Insurers have a duty to notify insureds of the exclusions they plan to use before discovery is complete and before the deadline for dispositive motions is reached."); *accord Mariani v. Bender*, 85 N.J. Super. 490, 499 (App. Div. 1998) (insurer not entitled to rely on notice clause in declaratory judgment suit between two insurers where insurer did not disclaim coverage on that ground in underlying suit).

Even if Travelers' invocation of Exclusion n at this late stage were appropriate, its reliance on this exclusion is misplaced. Travelers makes the conclusory assertion, without any citation to the record, that "[t]he facts here reveal that the costs sought in the underlying action [i.e., the Meelunie Complaint] were for the recall and the replacement of the corn syrup which did not meet required specifications." (CM/ECF No. 87.) As previously discussed, nothing in the record suggests that Meelunie's damaged corn syrup was ever recalled or replaced. Accordingly, the Court declines to hold that Exclusion n applies in this case.

## IV. CONCLUSION

For the foregoing reasons, Travelers motion for summary judgment is denied and USA Container's motion for partial summary judgment is granted. An appropriate Order accompanies

---

[9] Notably, Travelers did not invoke Exclusion n in its denial letter or in its answer to USA Container's counterclaim.

16

this Opinion.

Dated: July 8, 2013.

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE