NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>USA CONTAINER CO., INC.,<br><br>Defendant. | Civil Action No. 09-1612 (JLL) (JAD)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court upon the Motion for Final Judgment by Defendant USA Container Co., Inc. ("USA Container"). (ECF No. 114.) The Court has considered the submissions made in support of and in opposition to USA Container's Motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. Based on the following and for the reasons expressed herein, USA Container's Motion for Final Judgment is **granted in part and denied in part**.

**I.    BACKGROUND**

This action arises from an insurance coverage dispute between USA Container, a company engaged in the business of supplying industrial containers, logistical services, and warehousing, and its insurer, The Travelers Property Casualty Company of America ("Travelers"). Pursuant to the policy that USA Container procured from Travelers (the "Policy"), Travelers is required to "pay those sums that [USA Container] becomes legally obligated to pay as damages because of 'property damage' to which the insurance applies." (ECF No. 114-2 at 4.)

1

In 2006, USA Container contracted with Meelunie B.V./Amsterdam ("Meelunie") to arrange for the transfer of corn syrup from rail cars to drums. (ECF No. 96 at 2.) Because USA Container did not have the resources to heat the corn syrup in accordance with standard operating procedures, it subcontracted with Passaic River Terminal, LLC ("Passaic River") to perform the necessary work to transfer the corn syrup to the drums. (Id. at 2-3.)

In or about November 2007, Passaic River damaged Meelunie's corn syrup by overheating it. (Id. at 3.) The damage was not discovered until after the corn syrup was shipped overseas and rejected by Meelunie's customers. (Id.) As a result, Meelunie incurred approximately $700,000 in damages, inclusive of customs costs, storage fees, and other expenses. (Id.) Meelunie subsequently demanded that USA Container compensate it for its loss. (Id.) USA Container then made a claim to Travelers for coverage under the Policy. (Id. at 5.)

On October 29, 2008, before Travelers rendered its coverage determination, Meelunie filed a complaint in this District against USA Container and Passaic River. (ECF No. 114-2 at 2-3.) By letter dated December 19, 2008, Travelers denied USA Container coverage. (Id. at 7.) USA Container asked Travelers to reconsider its denial of coverage on January 26, 2009. (Id.) By letter dated March 20, 2009, Travelers' attorneys, on behalf of their client, offered to assist USA Container in settling the Meelunie Action by advancing the sum of $100,000 to be applied to the settlement. (Id. at 8.) This offer, which was contingent on Travelers' reservation of the right to seek the reimbursement of those funds in this action, was rejected by USA Container. (Id.; ECF No. 118-1 at 11.) On April 6, 2009, Travelers commenced the instant action, seeking, among other things, (1) a declaration that the Policy "does not provide coverage for the allegations in the Meelunie Complaint," and (2) a declaration "that Travelers has no obligations to USA Container in connection with the Meelunie Complaint." (ECF No. 1 at 3.)

In May 2009, Meelunie and USA Container entered into a settlement agreement, pursuant

to which USA Container agreed to pay Meelunie $425,000 plus 50% of any recovery that USA Container obtains in the present action, until Meelunie receives $732,000 (the "Settlement Agreement"). (ECF No. 114-2 at 3.)

On June 9, 2009, USA Container filed counterclaims against Travelers in the underlying action for breach of contract and bad faith. (ECF No. 96 at 6-7.) On April 26, 2013, Travelers moved for summary judgment as to both of its affirmative claims and USA Container's counterclaims. (Id. at 7.) Also on this date, USA Container moved for partial summary judgment as to its breach of contract claim. (Id.) Specifically, USA Container sought a ruling that the Policy "provides USA Container coverage for the claims of Meelunie . . . arising from sub-contractor Passaic River's damage to Meelunie's corn syrup, and that Travelers breached its duty to defend and indemnify USA Container." (Id.)

On July 8, 2013, this Court denied Travelers' motion for summary judgment and granted USA Container's motion for partial summary judgment. (ECF No. 96). On April 25, 2014, USA Container filed the instant Motion for Final Judgment, seeking (i) the full value of the Settlement Agreement ($732,000), (ii) litigation costs and attorney's fees, and (iii) prejudgment interest. ("USA Mot.," ECF No. 114.) Travelers filed an Opposition on June 12, 2014. ("Tr.'s Opp'n," ECF No. 118.) USA Container filed a Reply on July 9, 2014. (ECF No. 123.)

## II.   DISCUSSION

Travelers makes four arguments in opposition to USA Container's Motion for Final Judgment: (i) USA Container has not shown that its settlement with Meelunie was reasonable; (ii) USA Container has improperly calculated prejudgment interest; (iii) USA Container is not entitled to its requested attorney's fees; and (iv) USA Container is not entitled to prejudgment interest on its attorney's fees.

### A. Whether the Settlement was Reasonable

Travelers argues that "USA Container has failed to shoulder its burden to establish the reasonableness of its $425,000.00 settlement, let alone the $732,000.00 windfall which it seeks." (Tr.'s Opp'n at 2.) Under New Jersey law:

> Where an insurer wrongfully refused coverage and a defense to its insured, so that the insured is obliged to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him. The only qualifications to this rule are that the amount paid in settlement be reasonable and that the payment be made in good faith.

Griggs v. Bertram, 443 A.2d 163, 171-72 (N.J. 1982) (quoting Fireman's Fund Ins. Co. v. Sec. Ins. Co. of Hartford, 367 A.2d 864, 868 (N.J. 1976)). This District has stated that "[t]he Griggs standard does not call for 100% accuracy, but only that in light of all of the relevant facts and upon a reasonable inquiry, the insured agreed to a settlement amount that was reasonable and entered into in good faith." Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 357 (D.N.J. 1996).

Travelers argues that an award of $732,000 is a "windfall" for USA Container because USA Container only paid Meelunie $425,000 and is not contractually obligated to pay any further amount. This argument is erroneous – USA Container was under no obligation to pay more than $425,000 only if it did not prevail in the instant suit. As USA Container succeeded on summary judgment, it is entitled to collect the full amount of its settlement with Meelunie, so long as the settlement was reasonable under Griggs.

Turning to whether the $732,000 settlement was reasonable, USA Container has submitted documentation that Meelunie has suffered damages in the amount of $782,723.77, including a reduction based on Meelunie's mitigation efforts. (See Veelo Aff., ECF No. 114-18

¶¶ 17-18.)[1] In its Opposition, Travelers does not point to a single piece of evidence to suggest that the Settlement Agreement of $732,000 was unreasonable or was entered into in bad faith, and relies solely on its argument that it is only obligated to pay $425,000. As such, Travelers has not shown that the settlement was unreasonable under Griggs. See Burlington Ins. Co. v. Northland Ins. Co., 766 F. Supp. 2d 515, 530 (D.N.J. 2011) (finding a defendant liable for the full settlement amount when it failed to meet its "heavy burden to prove by a preponderance of the evidence that the settlement is 'unreasonable' and the product of 'bad faith and collusion.'").

Accordingly, this Court will award USA Container the full settlement amount of $732,000.

**B. Prejudgment Interest**

As a preliminary matter, this Court must determine whether USA Container is entitled to prejudgment interest. See Litton Indus., Inc. v. IMO Indus., Inc., 982 A.2d 420, 430 (N.J. 2009) ("[T]he award of prejudgment interest in a contract case is within the sound discretion of the trial court."). The Superior Court of New Jersey, Appellate Division has stated that "[w]here a coverage dispute involves the applicability of an exclusion, rather than the amount of a claim, the equities favor the claimant in the award of prejudgment interest." Benevenga v. Digregorio, 737 A.2d 696, 700 (N.J. Super. Ct. App. Div. 1999); see also Ellmex Const. Co., Inc. v. Republic Ins. Co., 494 A.2d 339, 349 (N.J. Super. Ct. App. Div. 1985) (stating that prejudgment interest is appropriate "where the question interfering with disposition of the claim is not the inability of the parties to agree upon the value of the claim but is rather an argument as to coverage").

---

[1] Travelers contends that USA Container must submit a report from an expert in the settlement of claims in order to sustain its burden, citing to Kelly v. Berlin, 692 A.2d 552 (N.J. Super. Ct. App. Div. 1997). In Kelly, the plaintiff, who was injured in an automobile accident, brought a malpractice suit against his doctor, arguing that the doctor's failure to timely diagnose a spinal injury that the plaintiff sustained in the accident reduced the value of the settlement the plaintiff received as a result of the accident. Id. at 555. The court found that expert testimony was required "to determine the fair settlement value of plaintiff's motor vehicle accident claim had plaintiff been aware of [his spinal injury]." Id. at 558. As such, the facts in Kelly are distinguishable from those in the present case.

5

Accordingly, because USA Container's dispute with Travelers pertained to coverage, this Court will allow an award of prejudgment interest.

### i) The Amount Upon Which to Calculate Prejudgment Interest

Travelers contends that USA Container should only be entitled to prejudgment interest on $425,000, the amount that USA Container has paid to Meelunie thus far. For the reasons discussed above, the Court rejects this argument. Travelers also points to the fact that in March 2009, it offered to contribute $100,000 towards any settlement that USA Container negotiated with Meeluniek, subject to its right to seek reimbursement in a subsequent declaratory judgment action, and argues that $100,000 should therefore be subtracted from the amount upon which prejudgment interest is calculated. The Court rejects this argument, as Travelers has failed to point to any authority to support the notion that it is entitled to this deduction.

### ii) The Date from Which to Calculate Prejudgment Interest

USA Container asserts that prejudgment interest should be calculated from June 12, 2008 – the date that it asserts Travelers completed its investigation of USA Container's claim. Travelers, however, contends that prejudgment interest should be calculated from the various dates that USA Container made its payments under the Settlement Agreement to Meelunie. "The purpose of awarding prejudgment interest is to compensate the claimant for the loss of income the money owed would have earned if payment had not been delayed." Unihealth v. U.S. Healthcare, Inc., 14 F. Supp. 2d 623, 642 (D.N.J. 1998). Applying this principle, a trial court may determine the appropriate date from which interest is to run. Id. at 642-43.

Here, this Court rejects Travelers argument that prejudgment interest should be calculated from the various dates that USA Container made its Settlement Agreement payments to Meelunie. Travelers asserts that such an approach is equitable because USA Container "had the

use of the settlement monies ($425,000) up until the time of the actual payment of the settlement." (Tr.'s Opp'n at 13.) This argument misconstrues the law, as the pertinent inquiry under Unihealth is when USA Container would have received the funds from Travelers had Travelers not denied USA Container payment for its claim. However, this Court also rejects USA Container's contention that prejudgment interest should be calculated from June 12, 2008. Although USA Container asserts that Travelers' *factual* investigation was completed on that date, it does not necessarily follow that Travelers' *legal* investigation was completed on that date. Because Travelers denied USA Container coverage on December 19, 2008, the Court finds this to be an appropriate date from which to calculate prejudgment interest, as this is when USA Container would have received its funds from Travelers had Travelers not improperly denied coverage. See Ellmex, 494 A.2d at 349 ("Plaintiff urges we should fix [the prejudgment interest] date as of the time the claim was denied . . . . [W]e will adopt plaintiff's suggestion."); Polito v. Cont'l Cas. Co., 689 F.2d 457, 461 (3d Cir. 1982) ("New Jersey courts . . . have long followed the doctrine that an insurance company defendant is liable for interest on a claim from the date on which payment was due under the policy.").

Accordingly, this Court will calculate prejudgment interest from December 19, 2008.

### iii) The Appropriate Prejudgment Interest Rate

In contract cases, "the rate at which prejudgment interest is calculated is within the discretion of the court." Litton, 982 A.2d at 430. The Third Circuit has stated that N.J. Ct. R. 4:42-11, the statute used to calculate postjudgment interest in tort actions, is an "appropriate benchmark" in determining the rate for prejudgment interest in contract cases. Gleason v. Norwest Mortgage, Inc., 253 F. App'x 198, 204 (3d Cir. 2007). Neither party disputes the use of this statute to determine the prejudgment interest rate. However, the parties argue over which

subsection of the statute is applicable.

Under R. 4:42-11(a)(ii):

> [T]he annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury.

Under R. 4:42-11(a)(iii), "for judgments exceeding the monetary limit of the Special Civil Part," prejudgment interest shall be calculated "at the rate provided in subparagraph (a)(ii) plus 2% per annum." However, "because in contract actions, prejudgment interest is assessed on a discretionary basis as the result of the application of equitable principles . . . . the strictures of R. 4:42–11 apply by their literal terms only to tort actions." DialAmerica Mktg., Inc. v. KeySpan Energy Corp., 865 A.2d 728, 732 (N.J. Super. Ct. App. Div. 2005). With respect to whether the 2% addition discussed in subsection (a)(iii) should be applied in contract cases, the Superior Court of New Jersey, Appellate Division has stated:

> We . . . find, in the absence of the "unusual circumstances" . . . that subsection (a)(ii) provides an appropriate starting point in determining the rate of prejudgment interest [in contract cases], but we do not in any sense foreclose the use of subsection (a)(iii) in connection with a rule-based calculation of prejudgment interest, should the equities demand it.

Id. at 734. Here, USA Container argues that it is entitled to the 2% addition because Travelers' SEC filings show that during the applicable time period, "Travelers beat the Fund's return even when augmented by the additional 2% set forth in R. 4:42-11(a)(iii)." (USA Mot. at 18.) However, "[t]he purpose of awarding prejudgment interest is to compensate *the claimant* for the loss of income the money owed would have earned if payment had not been delayed." Unihealth, 14 F. Supp. 2d at 642 (emphasis added). Thus, the amount earned by Travelers is not pertinent under this inquiry. Because USA Container has failed to otherwise show how "unusual circumstances" are present in this case, this Court will not apply the enhanced rate set forth in R.

8

4:42-11(a)(iii).

New Jersey Cash Management Fund's reported earnings for years 2008, 2009, 2010, 2011, 2012, 2013 and 2014 are as follows:

    2008: 5.5%
    2009: 4.0%
    2010: 1.5%
    2011: 0.5%
    2012: 0.5%
    2013: 0.25%
    2014: 0.25%

(ECF No. 114-14.)

Accordingly, this Court will calculate prejudgment interest using these rates.

### iv) Prejudgment Interest Calculation

Interest is calculated as follows, using simple interest. See W.R. Huff Asset Mgmt. Co., L.L.C. v. William Soroka 1989 Trust, No. 04-3093, 2009 WL 2436692, at *10 (D.N.J. Aug. 6, 2009) ("The most equitable interest rate is simple interest."). For the year of 2008, the interest rate is 5.5% per annum. 5.5% of $732,000 is $40,260. That amount divided by 366 days per year,[2] equals the amount of interest per diem, $110. The per diem amount is totaled by 13, the number of days of interest accrued in 2008, for a total sum in 2008 of **$1,430**. For the year 2009, since interest accrued for the entire year, the interest rate of 4.0% per annum yields **$29,280**. For the year 2010, the interest rate of 1.5% per annum yields **$10,980**. For 2011 and 2012, the interest rate of 0.5% per annum yields $3,660 for each year, or a total of **$7,320** for both years. For 2013, the interest rate of 0.25% per annum yields **$1,830**. For the year 2014, the interest rate is 0.25% per annum. 0.25% of $732,000 is $1,830. That amount divided by 365 days per year, equals the amount of interest per diem, $5.01. The per diem amount is totaled by 202, the

---

[2] 2008 was a Leap Year and thus lasted 366 days.

number of days of interest accrued in 2014, for a total sum in 2014 of **$1,012.77**.

Accordingly, based on the above calculations, the amount of prejudgment interest awarded to USA Container is **$51,852.77**.

### C. Attorney's Fees

#### i. Whether Fees Should be Awarded

USA Container seeks attorney's fees in the amount of $256,512.95. Pursuant to N.J. Ct. R. 4:42-9(a)(6), attorney's fees may be allowed "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." This Rule "was promulgated both to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." Guarantee Ins. Co. v. Saltman, 526 A.2d 731, 734 (N.J. Super. Ct. App. Div. 1987). An award of fees is not mandatory, and the trial court "has broad discretion as to when, where, and under what circumstances counsel fees may be proper and the amount to be awarded." Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 21 A.3d 1151, 1164 (N.J. 2011). Factors for a court to consider include:

> (1) the insurer's good faith in refusing to pay the demands, (2) excessiveness of plaintiff's demands, (3) bona fides of one or both of the parties, (4) the insurer's justification in litigating the issue; (5) the insured's conduct in contributing substantially to the necessity for the litigation on the policies, (6) the general conduct of the parties, and (7) the totality of the circumstances.

Enright v. Lubow, 521 A.2d 1300, 1304 (N.J. Super. Ct. App. Div. 1987) (internal citations omitted). "There is substantial overlap among the factors, and the list is not an exhaustive one." Mega Const. Corp. v. Quincy Mut. Fire Ins. Co., No. 09-01728, 2012 WL 3994473, at *10 (E.D. Pa. Sept. 12, 2012) (applying New Jersey law).

Here, Travelers argues that the policy rationale supporting attorney's fees is inapplicable to this case because its disclaimer of coverage was not groundless. However, while bad faith on

the part of the insurer is a factor, it is not a requirement. See IFA Ins. Co. v. Millburn Surgical Ctr., No. A-5352-09T4, 2011 WL 1376677, at *2 (N.J. Super. Ct. App. Div. Apr. 13, 2011) ("Ordinarily, [a] successful insured is presumptively entitled to attorney's fees and need not establish that the insurer acted in bad faith or arbitrarily in declining a claim." (internal quotations and citation omitted)); Sears Mortgage Corp. v. Rose, 634 A.2d 74, 88 (N.J. 1993) ("Although [the insurer] may not have been acting in bad faith when it refused to honor [the insured's] demands, to deny [the insured] their counsel fees would be to deny them the benefits of the insurance contract that they achieved as successful litigants."). Based on the totality of the circumstances, this Court finds that it is just to award USA Container attorney's fees. As this lawsuit was commenced by Travelers, factor five weighs in USA Container's favor. Further, as discussed below and pertinent to factor two, USA Container's demands are not unreasonable. Finally, relevant to factors three and six, there has been no bad faith on the part of USA Container throughout this ligation. While there also has been no bad faith on the part of Travelers, this Court nonetheless finds that "it is simply unfair to burden [USA Container] with attorney fees in order to receive moneys to which . . . [it] was entitled to in the first place." IFA Ins. Co., 2011 WL 1376677, at *2.

Accordingly, this Court will award USA Container attorney's fees.

### ii. The Reasonableness of the Fees

N.J. Ct. R. 4-42:9(b) provides that "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." The factors under RPC 1.5(a) include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

11

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.

N.J.R.P.C. 1.5(a)(1)-(8). Travelers asserts that the declaration of USA Container's counsel, Kenneth L. Moskowitz, Esq., in support of its application for attorney's fees is deficient because it does not address factors three and six of R.P.C. 1.5(a). However, "at least one New Jersey court has explained that 'an award of counsel fees may be affirmed even if the affidavit of services is deficient.'" Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 449 (3d Cir. 2003) (quoting Elizabeth Bd. of Educ. v. New Jersey Transit Corp., 776 A.2d 821, 827 (N.J. Super. Ct. App. Div. 2001)). Here, although USA Container has not fully complied with R.P.C. 1.5(a), this Court nonetheless finds that its request for attorney's fees is reasonable.

"The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate . . . ." Pub. Interest Research Grp. of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995). Here, although Moskowitz and his partner Steven R. Rowland, who have each been practicing law for over twenty years, normally bill at a rate of $425 per hour, their rates in the present case were $365 per hour. (ECF No. 114-3 ¶ 11.) Additionally, an associate working on the case had a billing rate of $285 per hour, and an of counsel attorney had a billing rate of $305 per hour. (Id. ¶ 12.) As similar rates have been approved in this District, this Court finds no reason to reject the rates set forth by USA Container. See, e.g., 2000 Clements Bridge, LLC v. OfficeMax N. Am., Inc., No. 11-0057, 2013 WL 3821461, at *8 (D.N.J. July 23, 2013) (approving the rate of $405 per hour for partners in a commercial litigation case); Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc., No. 09-1724, 2011 WL 2293334, at *2

(D.N.J. June 7, 2011) (approving rates of $450–$540 for partners and $210–$360 for associates in an insurance coverage case); Baughman v. U.S. Liab. Ins. Co., 723 F. Supp. 2d 741, 748 (D.N.J. 2010) (finding $325 to be a reasonable rate for an attorney with over twenty years of experience in an insurance coverage case).

Concerning whether the number of hours worked by USA Container's counsel was reasonable, Travelers has not made any specific objections to the time entries submitted by USA Container. As such, this Court will not reduce the amount of hours for which USA Container seeks compensation. See Bell v. United Princeton Props., Inc., 884 F.2d 713, 720 (3d Cir. 1989) (stating that an "adverse party's submissions cannot merely allege in general terms that the time spent was excessive").

Accordingly, this Court awards USA Container attorney's fees in the amount of $256,512.95.

### iii. Prejudgment Interest

USA Container also seeks prejudgment interest on its attorney's fees in the amount of $16,336.87. The Supreme Court of New Jersey has stated that "[a]bsent a controlling contractual provision, permitting prejudgment interest on attorneys' fees would be contrary to our strong public policy disfavoring shifting of attorneys' fees." N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys., Inc., 730 A.2d 843, 852 (N.J. 1999); see also Dickman Bus. Brokers v. Tomasulo, No. A-4535-09T2, 2011 WL 2348480, at *6 (N.J. Super. Ct. App. Div. June 9, 2011) (finding that prejudgment interest should not be awarded on attorney's fees when the contract between the parties did not provide for it). Accordingly, because USA Container has not pointed to such a contractual provision, this Court will not allow prejudgment interest on USA Container's attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, USA Container's Motion for Final Judgment is **granted in part and denied in part**. An appropriate order follows this Opinion.

_____
Jose L. Linares, U.S.D.J.

Date:          July 21, 2014
Original:     Clerk's Office
cc:            Hon. Joseph A. Dickson, U.S.M.J.
               All Counsel of Record
               File